Tanisha Lynette RODDY and Janet L. Roddy, Plaintiffs–Appellants,

v.

VOLUNTEER MEDICAL CLINIC, INC., and Edgar Perry, M.D., Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Feb. 26, 1996.

Permission to Appeal Denied by Supreme Court July 1, 1996

R.D. Hash, Maryville, for Appellants.

John K. Harber, with Pryor, Flynn, Priest & Harber, Knoxville, for Appellee Volunteer Medical Clinic, Inc.

Edward G. White, II and Wayne A. Kline, Knoxville, for Appellee Dr. Edgar Perry.

## OPINION

CLIFFORD E. SANDERS, Senior Judge.

The Plaintiffs have appealed from a summary judgment for the Defendants in Plaintiffs' suit alleging medical malpractice by the Defendants. We affirm the judgment of the trial court.

The genesis of this suit began during early spring, 1990, when Plaintiff Tanisha Roddy became sexually active and had an ongoing relationship with a young man through July, 1990. In late July, 1990, Miss Roddy spent two weeks visiting her aunt, Rita Hill, in New York City. While there, she sought medical treatment for a vaginal infection from her aunt's OB/GYN physician. At the same time, she requested a pregnancy test, which confirmed her belief she was pregnant. Miss Roddy proceeded to call the man in Tennessee with whom she had been sexually active. When assistance from him was not forthcoming, she called her aunt, Kathy Bounds, in Knoxville. Tanisha was aware her Aunt Kathy had previously had an abortion. They discussed Miss Roddy's pregnancy and her options. Tanisha did not want her mother to become aware of her pregnancy and Aunt Kathy agreed to help Tanisha when she returned to Knoxville.

Miss Roddy returned to her home in Clinton, Tennessee, on July 31, 1990. In accordance with prearranged plans between her and Aunt Kathy, Miss Roddy requested her mother's permission to stay with her Aunt Kathy in Knoxville for several days, and permission was granted. Miss Roddy determined she definitely did not want to have the

baby and made the decision to obtain an abortion.

On August 2, Tanisha and her aunt's roommate went to Defendant–Appellee Volunteer Medical Clinic, Inc. (the Clinic) for the purpose of Tanisha's obtaining an abortion. This was approximately a month before Tanisha's 16th birthday. At Volunteer Medical Clinic, she was counselled and she read and signed several forms. She gave her Aunt Kathy's Knoxville address and telephone number as her own home address and number "because she did not want anyone to contact her family" besides Aunt Kathy or herself. One of the forms she signed was a "Consent to Abortion" which granted consent to a Dr. Manning and whomever he might designate to assist him to perform an aspiration abortion under paracervical block anesthesia encompassing evacuation of the contents of the uterus. The in-take person at the Clinic counselled Miss Roddy, who read and signed the consent form. Aunt Kathy's roommate stayed with Miss Roddy through this process, until a nurse took Miss Roddy to an examining room to perform an ultrasound. After the ultrasound was performed, the nurse told Miss Roddy she was 14 to 16 weeks pregnant (subsequent hospital records indicate she was 14.5 weeks pregnant). Dr. Manning did not do the abortion that day and he was leaving town that night. Consequently, Miss Roddy was told to return the following day to have the abortion performed by another doctor.

Miss Roddy, along with Aunt Kathy and her roommate, returned to the Clinic the following day, August 3. Tanisha again went through the same counseling sessions, read and signed the same forms including a new "Consent to Abortion" form for Dr. Perry to perform the abortion. The abortion was performed by Defendant, Dr. Edgar Perry. A problem developed in the course of the abortion. Although Dr. Perry had cautioned Tanisha to lie perfectly still during the abortion procedure, at the point when the procedure was about 80% complete Tanisha made a sudden movement of her body, causing the instrument which Dr. Perry was using inside the uterus to perforate the wall of the uterus. Dr. Perry described the incident as follows:

"About that time Tanisha makes a sudden move, and it felt to me like this thing went through the wall, it was just like a feeling I had, a feeling, And I took the suction off, and I took it out, and I said I think we just perforated." Dr. Perry terminated the suction procedure and tried using forceps to remove the remaining portion of the fetus. This was not successful, however, and Tanisha was transported to nearby Fort Sanders Hospital. There, Dr. Morris Campbell repaired the perforation in the uterus and successfully completed the abortion. Miss Roddy was discharged from the hospital on the second day. She had only one follow-up visit with Dr. Campbell after her discharge from the hospital and has had no other medical treatment relating to the abortion. Dr. Campbell, in his affidavit, asserted, "To the best of my professional knowledge, Tanisha Roddy has suffered no permanent ill effects as a result of these events." Miss Roddy has continued to be sexually active since the abortion.

On August 2, 1991, the Plaintiffs filed suit against Defendants Volunteer Medical Clinic, Inc., and Dr. Perry, alleging medical negligence as well as the violation of Tenn.Code Ann. §§ 37–10–301, et seq., the Tennessee Parental Consent for Abortions by Minors Act. This act has been found to be unconstitutional. Later that month the Plaintiffs voluntarily dismissed their suit against the Defendants without prejudice.

In April, 1992, the Plaintiffs refiled their claim against the Defendants, alleging medical negligence, outrageous conduct and intentional infliction of emotional distress, as well as violations of Tenn.Code Ann. §§ 47–18–101, et seq., the Tennessee Consumer Protection Act, and Tenn.Code Ann. § 39–15–202, et seq., the criminal statutory scheme applicable to abortion services. Plaintiffs claimed they suffered severe pain, mental anguish, psychological injury and damages, for which they sought $1,000,000 in compensatory damages, and $10,000,000 in punitive damages, and requested that the actual damages be trebled in accordance with the Tennessee Consumer Protection Act.

The Defendants filed a motion to dismiss or, in the alternative, a motion for summary

judgment pursuant to Rules 12 and 56, TRCP. They insisted the court should dismiss the extraneous allegations in paragraphs 14 through 17 and 20 through 22 in Plaintiffs' complaint, and filed a memorandum of law in support of their motion.

The court, upon the hearing of Defendants' motion, entered an order in which he held the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101, et seq., was inapplicable to the provision of professional health care services; Plaintiffs' claims for "severe pain and mental anguish" and "psychological injury and damage as a direct and proximate result of the Defendants' negligence" failed to state a claim upon which relief could be granted; the complaint failed to state a cause of action for outrageous conduct or intentional infliction of emotional distress; and the Plaintiffs' claims for damages for violations of Tenn.Code Ann. § 39–15–201, et seq., were not valid because no private civil right of actions existed for any such alleged violations. Moreover, the court held that any alleged violation of Tenn.Code Ann. § 39–15–201, et seq., did not, and could not, constitute negligence per se. He further held that the provisions of the Medical Malpractice Review Board and Claims Act of 1975, Tenn.Code Ann. § 29–26–101, et seq., afforded all the necessary protection sought by the Plaintiffs in this cause of action, and dismissed Plaintiffs' claims as to those issues. The action of the court in dismissing these portions of the Plaintiffs' complaint were not appealed from and are final.

After the order was entered dismissing the extraneous allegations in the complaint, both Defendants filed answers to the remaining issues in the complaint. Dr. Perry, for answer, as pertinent, admitted that on August 3, 1990, Tanisha Roddy went to the Volunteer Medical Clinic, Inc., for the purpose of terminating her pregnancy. She signed a "Consent to Abortion" consenting for him, Dr. Perry, to perform an "aspiration abortion under paracervical block anesthesia" encompassing "evacuation of the contents of the uterus." He admitted a uterine perforation anterior to the cervical canal occurred during the surgical procedure. Miss Roddy was transferred to Fort Sanders Hospital where Dr. Morris Campbell closed the uterine perforation and successfully completed the abortion. He denied his conduct and actions deviated from the standard of care applicable to similar members of his profession. He denied he carelessly, negligently, and unskillfully operated on Tanisha Roddy. Dr. Perry joined issue on all remaining issues in the complaint and denied he was liable to either of the Plaintiffs in any amount.

Volunteer Medical Clinic, Inc., for answer to the remaining issues in the complaint, admitted Tanisha Roddy came to the Clinic on August 2, 1990, and again on August 3 for the purpose of having her pregnancy terminated. It said that through certain medical tests and procedures it was determined Miss Roddy was pregnant and she was advised she had entered the second trimester of her pregnancy. It denied that any care, evaluation or treatment received by Miss Roddy was negligently rendered. All averments of the complaint charging the Clinic with negligence or medical malpractice were denied. The Clinic joined issue on all the remaining issues in the complaint and denied it was liable to either of the Plaintiffs in any amount.

After completing discovery depositions, Dr. Perry and Volunteer Medical Clinic each filed a motion for summary judgment pursuant to Rule 56, TRCP. They each alleged in their motions they had performed all care of the Plaintiff in conformance with the recognized standards of acceptable professional practice of their profession or business in Knoxville or similar communities. As a result, there is no genuine issue as to any material fact, and Defendants are entitled to a judgment as a matter of law.

In support of his motion, Dr. Perry filed the affidavits of himself and Dr. Morris Campbell. He also relied upon the depositions of the parties and the pleadings in the cause.

In support of its motion, Volunteer Clinic relied on the affidavits of Lisa G. Thomas and Deborah J. Walsh, and also on the depositions of the parties and the pleadings filed in the proceedings.

The Plaintiffs, in response to the motions, filed the affidavit of Dr. William M. Holls, III, in response to both motions and the affidavit of Carol Everett in response to the motion of Volunteer Clinic.

Upon the hearing on the motions, the court sustained both the motions for summary judgment, and dismissed the complaint.

■ The Plaintiffs have appealed, saying the court was in error in dismissing the complaint. We cannot agree, and sustain the trial court for the reasons hereinafter stated. The gist of Plaintiffs' appeal is that Miss Roddy did not have the capacity to consent to the abortion procedure and, even if she did possess the capacity to consent to the abortion procedure, she did not give "informed" consent.

Determining whether Defendants failed to obtain informed consent from Miss Roddy is dependent upon the standard of care of the profession or specialty. If informed consent is not effectively obtained, the Defendants' departure from the standard of care is not negligence, but battery, because the doctrine of battery is applicable to cases involving treatment performed without informed or knowledgeable consent. Malpractice is based on the lack of care or skill in the performance of services contracted for, and battery is predicated on wrongful trespass on the person regardless of the skill employed. The assertion of one is the denial of the other. *Cardwell v. Bechtol,* 724 S.W.2d 739 (Tenn.1987). *Cardwell* is the landmark case in this jurisdiction, holding that mature minors have the capacity to consent in medical malpractice cases. As pertinent, the court said:

> Recognition that minors achieve varying degrees of maturity and responsibility (capacity) has been part of the common law for well over a century. See, e.g., *The Queen v. Smith,* 1 Cox C.C. 260 (1845); 42 Am.Jur.2d, Infants, §§ 9, 45, 142. The rule of capacity has sometimes been known as the Rules of Sevens: under the age of seven, no capacity; between seven and fourteen, a rebuttable presumption of no capacity; *between fourteen and twenty-one, a rebuttable presumption of capacity.* (Emphasis ours.)

At the time Miss Roddy signed the consent to abortion document, she was just one month from her 16th birthday and Appellants failed to rebut the presumption of capacity.

■ A more compelling reason, however, why we must affirm the trial court on this issue is that there is no allegation or issue or relief sought in the pleadings as they now stand after the order of the trial court sustaining the motion of the Defendants to dismiss various allegations in Plaintiffs' complaint.

The only time, in their complaint, that the Defendants challenged adequate consent by Plaintiffs is in paragraph 15 of the complaint in which they alleged the Defendants failed to comply with T.C.A. § 39–15–202(a), (b)(1–6). They alleged the failure of the Defendants to comply with the statute voided any consent given by Miss Roddy, and this action and inaction constituted a battery upon the person of Miss Roddy.

The Defendants, in their motion to dismiss, as pertinent, said: "That the allegations of paragraph 15 of the complaint are based upon Tenn.Code Ann. § 39–15–202(b)(1–6). (A) This statute is unconstitutional under the United States Constitution because it infringes unreasonably upon the right of privacy grounded in the Constitution's guarantees of personal liberty, which include a woman's right to terminate her pregnancy. *Akron v. Akron Center for Reproductive Health,* 462 U.S. 416 [445–47], 103 S.Ct. 2481, 2501, 76 L.Ed.2d 687, 712 (1983)...."

In sustaining the Defendants' motion, the court held, in its order of May 3, 1993, as follows: "No private civil right of action exists for alleged violations of T.C.A. § 39–15–201, et seq. Accordingly, the defendants' Motion to Dismiss those allegations of the plaintiffs' Complaint shall be sustained."

The Plaintiffs never amended their complaint to allege failure of consent, nor is the issue of the court's sustaining Defendants' motion an issue on this appeal. In the case of *Fidelity–Phenix Fire Ins. Co. of New York v. Jackson, et al.,* 181 Tenn. 453, 181 S.W.2d 625, 629 (1944) our supreme court, in

addressing the requirement that the pleadings set forth the relief sought, said:

> No rule is better settled than that both allegations and proof are essential to a decree or judgment and that there can be no valid decree unless the matter on which the decree is rested is plainly within the scope of the pleadings.

The court also quoted with approval:

> "In order to give a judgment the merit and finality of an adjudication between the parties, it must be responsive not only to the proof but to the issues tendered by the pleadings, because pleadings are the very foundation of judgments and decrees. A judgment will be void which is a departure from the pleadings, and based upon a case not averred therein, since if allowed to stand it would be altogether arbitrary and unjust and conclude a point upon which the parties had not been heard.... Therefore, the rule is firmly established that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings."

*Id.* 181 S.W.2d at 629. *Also see John J. Heirigs Const. Co. v. Exide, et al.*, 709 S.W.2d 604 (Tenn.App.1986).

 This brings us to the question of whether or not the court was in error in granting summary judgment on the issue of medical malpractice. It is undisputed in the record that Dr. Perry was not an employee or agent for Volunteer Medical Clinic, nor is there any proof in the record the Clinic did anything or failed to do anything which contributed to the injuries Tanisha Roddy may have received resulting from the abortion. The contentions of the Plaintiffs and the affidavits filed by them in response to the motion for summary judgment by the Clinic relate exclusively to the issue of consent and informed consent.

The affidavit filed by Dr. Perry as to his care and treatment and the affidavit filed by Dr. Morris Campbell were practically identical. In Dr. Campbell's affidavit, as pertinent, he said: "Based upon my review as well as upon my professional training and experience, it is my professional opinion, within a reasonable degree of medical certainty, that Dr. Perry's care and treatment of Tanisha Roddy was at all times and in all respects performed in conformance with the recognized standards of acceptable professional practice applicable to physicians practicing in Knoxville, Tennessee, or similar communities under the same or similar circumstances. It is my professional opinion, with a reasonable degree of medical certainty, that Dr. Perry's care and treatment of Tanisha Roddy did not deviate from the recognized standards of acceptable professional practice at any time in any respect whatsoever, and that the uterine perforation complication that led to Ms. Roddy's August 3, 1990, admission to Fort Sanders Regional Medical Center can and does occur despite the exercise of skill and care and the best medical efforts on the part of attending medical personnel such as Dr. Perry. The complication was recognized, confirmed and appropriately handled. To the best of my professional knowledge, Tanisha Roddy has suffered no permanent ill effects as a result of these events." The affidavit filed by Dr. Perry is to the same effect.

The Plaintiffs, in response to Defendants' motion for summary judgment, filed the affidavit of Dr. William M. Holls, III, in opposition to the motions of both Dr. Perry and Volunteer Clinic. Dr. Holls's affidavit states he is board certified in obstetrics and gynecology and is familiar with the standards of acceptable professional practice applicable to physicians' performing pregnancy termination surgery in the Knoxville area. He fails to state, however, that he is familiar with the standard of care that should be performed by ambulatory health clinics in Knoxville or similar communities. The bulk of his affidavit relates to his dissatisfaction with the consent of Tanisha Roddy and failure to notify her mother, Janet Roddy, of the abortion. As pertinent, his affidavit states: "Based upon my review as well as upon my professional training and experience, it is my professional opinion, within a reasonable degree of medical certainty, the care and treatment of Tanisha Roddy delivered by Dr. Edgar Perry was not in conformance with the recognized standards of acceptable professional practice applicable to physicians practicing in Knoxville, Tennessee, or similar

communities under the same or similar circumstances. .... Additionally, it is my professional opinion that Dr. Edgar Perry deviated from the recognized standards of acceptable professional practice by failing to terminate this procedure immediately upon suspecting that he had perforated the anterior wall of Tanisha Roddy's uterus, given the less than optimal circumstances under which Dr. Perry was proceeding and that Volunteer Medical Clinic deviated from recognized standards of ambulatory health care institutions by failing to immediately terminate all procedures being performed on Tanisha Roddy when Dr. Edgar Perry announced that he thought he had perforated the anterior wall of Tanisha Roddy's uterus."

■ We find the affidavit fails to meet the requirements of T.C.A. § 29–26–115 for the purpose of establishing medical malpractice for three reasons. Insofar as Volunteer Clinic is concerned, there is no showing Dr. Holls has any knowledge of the standard of care required of an ambulatory health clinic in Knoxville or any other community. His affidavit presupposes the clinic had authority to require Dr. Perry to terminate all procedures being performed by him but the undisputed proof shows the Clinic had no control over Dr. Perry. Also, T.C.A. § 29–26–115(a)(3) provides the claimant shall prove "as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." The Plaintiffs here have the burden of proving by expert testimony (1) the standard of care, (2) that the Defendants deviated from that standard, and (3) that as a proximate result of the Defendants' negligent act or omission, the Plaintiffs have suffered injuries which would not otherwise have occurred. *Dolan v. Cunningham,* 648 S.W.2d 652 (Tenn.App.1982); *Parker v. Vanderbilt Univ.,* 767 S.W.2d 412 (Tenn.App.1988); *Hurst v. Dougherty,* 800 S.W.2d 183 (Tenn. App.1990). The law presumes a medical practitioner has discharged his full duty to a patient and will not presume negligence from the fact that the treatment was unsuccessful. *Watkins v. United States,* 482 F.Supp. 1006 (M.D.Tenn. 1980); *Ward v. United States,* 838 F.2d 182 (6th Cir.1988). Nowhere in Dr. Holls's affidavit does he declare any specific facts showing there is a genuine issue of material fact for trial. The testimony of a physician as to what he would do or his opinion of what should have been done does not prove the statutory standard of medical practice. *Lewis v. Hill,* 770 S.W.2d 751 (Tenn.App.1988). Nowhere did Dr. Holls testify that as a proximate result of the Defendants' alleged negligent acts or omissions, the Plaintiffs suffered injuries which would not otherwise have occurred. In fact, the record before us demonstrates the proximate cause of Miss Roddy's difficulties was her sudden movement of her body during the surgery.

■ "The issues which lie at the heart of evaluating a summary judgment motion are: (1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial." *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn.1993). "The test for a 'genuine issue' is whether a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* at 214. "When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the non-moving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. The non-moving party may not rely upon the allegations or denials of his pleadings in carrying out this burden as mandated by Rule 56.05." *Id.* at 214. Plaintiffs failed to meet this burden.

We find that Plaintiffs did not rebut the presumption that Miss Roddy was a mature minor having the capacity to consent, nor did they allege lack of consent or informed consent in their complaint as modified by the trial court's order. Moreover, Plaintiffs furnished no testimony that as a proximate result of the Defendants' alleged negligent act or omission, the Plaintiffs suffered injuries which would not otherwise have occurred.

■ "When there is no dispute over the evidence establishing the facts that control the application of rule of law, summary judgment is an appropriate means of deciding that issue." *Byrd v. Hall*, at 214–15. Reviewing the evidence in favor of the non-moving party, we find the trial judge was correct in concluding Plaintiffs have failed to establish that a genuine, material factual dispute exists which necessitates resolution by a trier of fact, and the judgment of the trial court must be affirmed.

The issues are found in favor of the Appellees. The judgment of the trial court is affirmed and the cost of this appeal is taxed to the Appellants. The case is remanded to the trial court for any further necessary proceedings.

GODDARD, P.J., concur.

FRANKS, J., not participating.