IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 12, 2004 Session

## SHERRI DYER KENDALL v. LANE COOK, M.D.

**Appeal from the Circuit Court for Knox County**
**No. 2-750-01     Harold Wimberly, Judge**

**No. E2003-02227-COA-R3-CV     Filed July 21, 2004**

Sherri Dyer Kendall ("Plaintiff") sought treatment for bipolar disorder from a psychiatrist, Lane Cook, M.D. ("Defendant"). Defendant prescribed Topamax for Plaintiff. Less than one week later, Plaintiff began to experience loss of vision, severe headache, and severe vomiting. Plaintiff was diagnosed with acute angle closure glaucoma and underwent several surgical procedures to control or correct the problem. When Defendant prescribed Topamax to Plaintiff, it was unknown in the medical community that a potential side effect of Topamax was acute angle closure glaucoma. That acute angle closure glaucoma was a potential side effect was discovered later by the medical community, and Plaintiff[1] sued Defendant[2] for medical malpractice. At the close of Plaintiff's proof at trial, Defendant moved for a directed verdict, which the Trial Court granted. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., E.S. and HOWELL N. PEOPLES, SP. J., joined.

Samuel W. Brown and Arthur F. Knight, III, Knoxville, Tennessee, for the Appellant, Sherri Dyer Kendall.

F. Laurens Brock, Anthony A. Jackson, and Justin M. Sveadas, Chattanooga, Tennessee, for the Appellee, Lane Cook, M.D.

---

[1] Craig Kendall, Sherri Dyer Kendall's husband, was initially a named plaintiff in this suit, however, an Order of Voluntary Dismissal was entered prior to trial dismissing Craig Kendall's claims against Defendant.

[2] Sherri Dyer Kendall and Craig Kendall also sued Johnson & Johnson, Inc. and Ortho-McNeil Pharmaceutical, Inc., but an Agreed Order of Dismissal was entered as to these defendants prior to trial.

# OPINION

## Background

The Trial Court directed a verdict for Defendant at the close of Plaintiff's proof. Therefore, the evidence we discuss in this Opinion is the evidence presented by Plaintiff at trial.

Plaintiff began seeing Defendant in 1993, for treatment of her previously diagnosed bipolar disorder. Plaintiff saw Defendant on an irregular basis for approximately eight years. Defendant prescribed several different medications for Plaintiff during that period.

In 2001, Defendant changed Plaintiff's medication and prescribed Topamax. Less than one week later, Plaintiff began to experience loss of vision, severe headache, and severe vomiting. Plaintiff's husband took her to the emergency room. After extensive testing, Plaintiff was sent by ambulance to see an ophthalmologist. That day, and over the course of the next few days, Plaintiff saw several doctors including an ophthalmologist, a glaucoma specialist, a retinologist, a neurologist, and a rheumatologist. Plaintiff also underwent some surgical procedures and was hospitalized as a result. During this time, Plaintiff was in what she described as "excruciating pain" and her eyes were swollen shut. She was diagnosed with acute angle closure glaucoma.

Plaintiff's vision slowly began to return after five days. However, Plaintiff was legally blind during those five days. Although Plaintiff was told when she first went to the hospital to stop taking Topamax, it wasn't until several months later that Plaintiff's problems definitely were linked to the Topamax. In total, Plaintiff had five surgeries on her right eye and two on her left. Currently, Plaintiff's vision is 20/20 with glasses correction, and she has a slight cataract in one eye. Plaintiff sued Defendant for medical malpractice for his having prescribed the Topamax for her.

At trial, Plaintiff presented the expert witness testimony of Susan A. Van Meter, M.D., a psychiatrist who specializes in mood disorders characterized by depression and manic depression or bipolar disorder. Dr. Van Meter stated she is employed currently by GlaxoSmithKline Pharmaceutical Company working in drug development.

Dr. Van Meter testified she uses The Expert Consensus Guidelines Series, Medication Treatment of Bipolar Disorder for the year 2000 ("Guidelines"), which are published to help physicians "evaluate what are options that have been known to work, what are options that are potentially effective, and what are options that we don't really have enough information about." The Guidelines list Topamax as a treatment of last resort to add to existing medication. However, Dr. Van Meter admitted the Guidelines are "not something that physicians should follow exactly. It's a recommendation. . . ." Dr. Van Meter testified "[t]he standard of care would be to try a first-line agent [as listed in the Guidelines, such as], lithium, Depakote, Tegretol; a trial of an atypical antipsychotic, Risperdal, Zyprexa. And failing that, looking at other options, lamotrigine, Clozapine,

the addition of Topamax, Neuontin." Dr. Van Meter would consider Topamax to be a treatment of last resort after trying even electric shock therapy first.

Dr. Van Meter testified that at the time Defendant prescribed Topamax for Plaintiff, neither were there any studies showing Topamax was effective for treating bipolar disorder, nor had the drug passed any clinical trials or double blind placebo controlled studies. However, Dr. Van Meter admitted that at the time Defendant prescribed Topamax, there were case reports and articles in medical publications documenting cases where patients were treated with Topamax by itself for bipolar disorder with good results.

Dr. Van Meter testified "medications do have side effects." However, Dr. Van Meter admitted it was unknown in the medical community at the time Defendant prescribed Topamax that a potential side effect of this drug was acute angle closure glaucoma. Dr. Van Meter admitted Defendant could not have warned Plaintiff about a possible side effect that was unknown. Dr. Van Meter did not testify about any specific side effects of Topamax that were known at the time Defendant prescribed Topamax for Plaintiff.

Dr. Van Meter admitted there are nationally recognized experts in the treatment of bipolar disorder who suggest trying Topamax as a second or third-line choice on its own. Dr. Van Meter also admitted there are doctors who are as skilled, or more skilled than she, who would prescribe Topamax as a first-line drug by itself. Basically, she disagrees with these other doctors with similar or more experience about the order in which the medicine should be given. Although Dr. Van Meter testified she believes Topamax is a last resort for the treatment of bipolar disorder, she testified that she has prescribed Topamax for some of her psychiatric patients for weight loss.

At the close of Plaintiff's proof at trial, Defendant moved for a directed verdict arguing that Plaintiff failed to prove Defendant breached the standard of care, and that Plaintiff failed to prove Defendant could have foreseen Plaintiff's injuries, which demonstrated that Defendant did not proximately cause Plaintiff's injuries. In an Order of Judgment entered August 25, 2003, the Trial Court granted Defendant's motion. Plaintiff appeals to this Court.

**Discussion**

Although not stated exactly as such, Plaintiff raises one issue on appeal: whether the Trial Court erred in granting Defendant's motion for directed verdict.

As our Supreme Court has instructed:

In ruling on a motion for directed verdict, trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). A court may grant the motion only

if reasonable minds could reach only one conclusion from the evidence. *Id.* Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict. *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn. 1982).

*Gaston v. Tennessee Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003).

In a medical malpractice action, such as this case, a plaintiff has the burden of proving:

(1) The recognized standard of acceptable professional practice in the profession and the speciality thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115 (a) (2003).

In this case, the Trial Court held that Plaintiff's expert witness failed to establish either the standard of care or proximate cause. We first will address the standard of care.

The Trial Court stated that Plaintiff's expert witness:

described and defined the standard of care as being the basically accepted medical approach to treatment of a patient. She said that the standard of care in Knoxville in 2001, when these events which are the subject of this case occurred, involved the course of treating a patient as set out in one of the exhibits, exhibit entitled Expert Consensus Guideline Series, Medical Treatment of Bipolar Disorder, Year 2000.

She says that the defendant in this case violated the standard of care in that he did not proceed in accordance with that guideline and did not go through the accepted first line treatments and proceed on down the list of treatments as shown in that guideline.

In relation to the standard of care, while she agreed that this guideline, or any guideline, did not, in itself, establish a rigid formula, she did say that this defendant, in her opinion, violated the standard of care by moving to the bottom of the list and prescribing this medication, Topamax, without first trying or at least offering the other treatments on the list.

-4-

She agreed that other physicians, some of which were recognized as - - by her as experts, national experts with national reputation, may well have other ideas about the course of treatment, the timing of treatment, whether medications such as the one in question here, Topamax, should be used or could be used by themselves or should be used only in connection with other medications.

She agreed that she had a disagreement with other doctors of similar experience or greater experience about the order in which medicine should be given, but that in her opinion, she would prescribe to this consensus guideline, and anything else would be a violation of the then existing standard of care.

\* \* \*

Now it's interesting to note that the use of Topamax, itself, would not be an improper thing to do, even under this witness' testimony and opinions. It could be used, as she expressed many times, as a last resort, or in combination with other medications. It could also be used, as she uses it sometimes, in the situations where a patient was interested in losing weight, and that was an appropriate consideration for a medical doctor.

As this Court stated in *Roddy v. Volunteer Med. Clinic, Inc.*, "[t]he testimony of a physician as to what he would do or his opinion of what should have been done does not prove the statutory standard of medical practice." *Roddy v. Volunteer Med. Clinic, Inc.*, 926 S.W.2d 572, 578 (Tenn. Ct. App. 1996). "It is not a departure from the applicable standard of care for a physician to use a procedure that is but one of several procedures recognized in the profession as adequate in the treatment of the plaintiff's condition." *Harris v. Buckspan*, 984 S.W.2d 944, 952-53 (Tenn. Ct. App. 1998).

In this case, Dr. Van Meter did testify she believed it fell below the standard of care to prescribe Topamax before trying other options. However, Dr. Van Meter admitted that other recognized experts in the field, some with more experience than she has, would disagree with her position that Topamax is a treatment of last resort. She also admitted that the Guidelines she follows are merely a recommendation, "not something that physicians should follow exactly. . . ." In addition, Dr. Van Meter admitted she has prescribed Topamax by itself to some of her patients for weight loss. Thus, Dr. Van Meter testified merely about what she would have done, or what she believes Defendant should have done rather than what actually constitutes the sole treatment choice that is the recognized standard of acceptable professional practice in this situation.

Dr. Van Meter admitted that Topamax did appear on the Guidelines as a possible treatment for bipolar disorder and that, at the time Defendant prescribed Topamax, there were case reports and articles in medical publications documenting cases where patients were treated with Topamax by itself for bipolar disorder with good results. Dr. Van Meter also admitted there are other physicians, some with more experience than she has, who would prescribe Topamax by itself

-5-

as a first or second-line drug for the treatment of bipolar disorder. Dr. Van Meter merely disagrees with other physicians about the order in which Topamax should be prescribed. Thus, Dr. Van Meter's testimony establishes that Defendant chose one of several recognized options for the treatment of Plaintiff's bipolar disorder, an act which does not fall below the standard of care even though it would not be the treatment option used by Dr. Van Meter. Although Dr. Van Meter stated she believed Defendant fell below the standard of care, we agree with the Trial Court that her testimony, when taken as a whole, does not establish any standard of care breached by the Defendant.

Regarding proximate cause, the Trial Court held that Plaintiff's expert witness testimony:

> fail[s] to establish a legal causal connection or a proximate causal connection between the violation of the standard of care described by this witness and the unfortunate result which was suffered by this particular plaintiff.

> * * *

> These particular injuries, the eye injury and the severe distress and discomfort suffered by the plaintiff at that time were unknown side effects of the use of this medication. . . .

In *Bara v. Clarksville Mem'l Health Sys., Inc.*, this Court discussed the foreseeability requirement for finding proximate case, stating:

> Taken as a whole, our cases suggest a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

> The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. 'The fact that an accident may be freakish does not per se make it unpredictable or unforeseen.' It is sufficient that harm in the abstract could reasonably be foreseen.

*Bara v. Clarksville Mem'l Health Sys., Inc.*, 104 S.W.3d 1, 11-12 (Tenn. Ct. App. 2002) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)) (citations omitted). As our Supreme Court noted in *Moon v. St. Thomas Hosp.*, "the particular harm need not have been foreseeable if another 'harm of a like general character was reasonably foreseeable.'" *Moon v. St. Thomas Hosp.*,

983 S.W.2d 225, 229 (Tenn. 1998) (quoting *Spivey v. St. Thomas Hosp.*, 211 S.W.2d 450, 457 (Tenn. Ct. App. 1947)).

Plaintiff's appellate brief argues that "the lack of knowledge on the part of the medical community of the connection between Topamax and acute angle closure glaucoma is not relevant to the issue of legal causation, or any other issue to be tried in this case." Basically, Plaintiff argues that even though the particular injury suffered by Plaintiff was not foreseeable, it was within a range of risk created by the alleged negligence and some harm could have reasonably been foreseen. Plaintiff states "[i]t is undisputed that Topamax caused the reaction." Plaintiff cites *Pitman v. Upjohn Co.* for the proposition "that drugs are considered to be unavoidably unsafe products" and argues that since all drugs have side effects, whether known or unknown, the injury to Plaintiff was a harm that could reasonably be foreseen. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994).

We have neither the authority nor the inclination to rewrite Tenn. Code Ann. § 29-26-115(a) so as to delete the proximate cause requirement by holding that since all drugs have potential side effects of some type, whether known or unknown and whether mild or deadly, any injury can reasonably be foreseen. Adoption of the rule proposed by Plaintiff would eliminate the foreseeability requirement as an element of proximate causation, contrary to both Tenn. Code Ann. § 29-26-115(a) and long established case law including *Moon v. St. Thomas Hosp*. and *Bara v. Clarksville Mem'l Health Sys., Inc.*

In this case, the potential side effect of acute angle closure glaucoma was an unknown side effect of Topamax when Defendant prescribed Topamax for Plaintiff. Plaintiff's expert witness admitted Defendant could not have warned Plaintiff of a possible side effect that was unknown. In addition, other than Plaintiff's expert's assertion that all drugs have side effects, Plaintiff produced no evidence showing any potential side effect of taking Topamax. The range of possible side effects from ingestion of drugs can range from mild ones, such as dry mouth, to severe ones, such as sudden death. Neither the jury nor the Trial Court or this Court is free to speculate about what the potential side effects, if any, of Topamax might be.

Plaintiff produced no evidence showing that Defendant "could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss [to Plaintiff] occurred." *Bara*, 104 S.W.3d at 11-12 (quoting *McClenahan*, 806 S.W.2d at 775). Plaintiff produced no evidence of any potential side effect or any specific possible harm, even a "harm in the abstract", that Defendant could have foreseen from Plaintiff's taking Topamax. *Id*. Plaintiff presented no proof whatsoever that any harm, even a "harm of a like general character was reasonably foreseeable" from Plaintiff's taking Topamax. *Spivey*, 211 S.W.2d at 457. As there was no showing that Defendant could have reasonably foreseen any harm, Plaintiff failed to prove a proximate causal connection between the alleged violation of the standard of care and the unfortunate and serious result suffered by Plaintiff.

Taking the strongest legitimate view of the evidence in favor of Plaintiff, the non-moving party, construing all evidence in Plaintiff's favor and disregarding all countervailing evidence, as we must, we hold that reasonable minds could reach only one conclusion from the evidence, i.e., that Plaintiff failed to prove all of the elements of her claim. We affirm the Trial Court's Order of Judgment entered August 25, 2003, granting Defendant's motion for a directed verdict.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Sherri Dyer Kendall, and her surety.

_____
D. MICHAEL SWINEY, JUDGE