IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2004 Session

**ESTATE OF JASON JENKINS**

Appeal from the Circuit Court for Davidson County
No. 00C-2944

No. M2003-01561-COA-R3-CV - **Filed November 16, 2004**

This is a suit for personal injuries brought by the mother of a mentally challenged 17 year old boy occurring when his teacher attempted to transfer him from one chair to another and tripped over a nearby rocker. Neither his teacher nor the Defendant Nurse who immediately attended to him after the accident detected the fractured leg. Young Jason Jenkins died from causes unrelated to the accident, and his suit was revived against Defendants, Metropolitan Government of Nashville, Davidson County, Mary Ann Armbrister, and Lisa Morrow. The case was voluntarily dismissed as to Defendant teacher Ms. Armbrister, and a settlement was reached between Plaintiff and Metropolitan Government of Davidson County. The trial court sustained a Motion for Summary Judgment on behalf of Ms. Morrow from which Plaintiff appeals. We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellant, Tammie Fralix, Administratrix of the Estate of Jason Jenkins.

C. Hayes Cooney, Nashville, Tennessee, for the appellee, Lisa Morrow.

**OPINION**

Jason Jenkins was a mentally challenged 17-year-old child enrolled in Harris-Hillman School's special education program. Metropolitan Government of Davidson County operated Harris-Hillman School for the disabled, and employed Mary Ann Armbrister as a teacher at the school. Lisa Morrow was a licensed practical nurse at Harris-Hillman and also an employee of Metropolitan Government. It is alleged by Plaintiff and undisputed by Defendants that both Ms.

Armbrister and Ms. Morrow were employees of Metropolitan Government and, at the time of the incidents involved in the case, were acting within the course and scope of their employment. Venue and jurisdiction are based upon Tennessee Code Annotated section 29-20-101, et seq., the Tennessee Governmental Tort Liability Act.

It is alleged and established by the undisputed proof that, on November 12, 1999, Ms. Armbrister, while holding Jason in her arms, tripped and fell attempting to transfer him from one chair to another. Jason Jenkins was attended at the scene both by Ms. Armbrister and by Ms. Morrow. The existence or extent of his injuries was not immediately discovered by either Ms. Armbrister or Ms. Morrow. When he was returned home by bus at the end of the day, his mother immediately took Jason to Vanderbilt Hospital at which time his broken leg was discovered and treated.

On October 6, 2000, Jason Jenkins, by next friend and mother, Tammy Fralix, filed this suit for personal injuries in the Circuit Court of Davidson County. While the suit was pending on January 3, 2002, Jason Jenkins unexpectedly died of causes not connected with his injuries, and this suit was revived in the name of his estate. Metropolitan Government answered the Complaint essentially denying allegations of proximate negligence and by way of affirmative defense asserted discretionary function immunity from liability pursuant to Tennessee Code Annotated section 29-20-205(1). Ms. Armbrister answered essentially denying all allegations of proximate negligence and by way of affirmative defense asserted that no action for personal injuries could be brought against her because she was personally immune from such claims under Tennessee Code Annotated section 29-20-310.

Ms. Morrow answered the claim pointing out that she was a licensed practical nurse and not a registered nurse but was, at all times, an employee of Metropolitan Government acting within the scope and course of her employment. She further asserted the affirmative defense of comparative fault on the part of Co-Defendants.

Since Plaintiff dismissed her case against Ms. Armbrister, and settled her case as to Defendant Metropolitan Government of Davidson County, the case remains before the court only as to Ms. Morrow and only in her capacity as a "health care practitioner" within the meaning of Tennessee Code Annotated section 29-20-310(b). Except for such status she is immune, just as the teacher Ms. Armbrister is immune, under the terms of that same statute. *Hill v. City of Germantown*, 31 S.W.3d 234 (Tenn. 2000).

Tennessee Code Annotated section 29-20-310(b) provides:

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner. No claim for medical malpractice may be brought against a health care practitioner or judgment entered against a health care

practitioner for damages for which the governmental entity is liable under this chapter, unless the amount of damages sought or judgment entered exceeds the minimum limits set out in § 29-20-403 or the amount of insurance coverage actually carried by the governmental entity, whichever is greater, and the governmental entity is also made a party defendant to the action. As used in this subsection, "health care practitioner" means physicians licensed under title 63, chapter 6, and nurses licensed under title 63, chapter 7.

Tenn. Code Ann. § 29-20-310(b).

Because Ms. Morrow is a licensed practical nurse, she is subject to liability for proximate negligence under the provisions of Tennessee Code Annotated section 29-26-115, et seq.

While both parties assert the single issue on appeal of whether or not the trial court erred in granting summary judgment to Ms. Morrow, it appears that three sub-issues are actually involved:

1. Did the rule in *Transports, Inc. v. Perry*, 414 S.W.2d p. 1 (Tenn. 1967) survive the implementation of comparative fault principles set forth in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992)?
2. Did Plaintiff offer any expert testimony to establish a disputed question of material fact as to the standard of acceptable professional practice and any deviation therefrom as is required in medical malpractice actions by the provisions of Tenn. Code Ann. § 29-26-115(a)?
3. In considering motions for summary judgment is the court limited to considering the respective statements of undisputed facts under Tenn. R. Civ. P. 56.03 rather than considering the entire record before the court including affidavits, depositions, and other materials designated in Tenn. R. Civ. P. rule 56.06?

Prior to the decision of the Supreme Court in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992), Tennessee recognized the well-settled common law rule that negligence and contributory negligence presented " ' all or nothing' " questions. 833 S.W.2d 52 at 54. By the same common law rule, proximate contributory negligence absolutely barred recovery by Plaintiff. *Talbot v. Taylor*, 184 Tenn. 428, 432, 201 S.W.2d 1, 3 (Tenn. 1935); *Hudson v. Gaitan*, 675 S.W.2d 699, 704 (Tenn. 1984). The burden of proof was on Plaintiff to establish the proximate negligence of Defendant by a preponderance of the evidence. *DeGlopper v. Nashville Railway and Light Co.*, 123 Tenn. 633, 134 S.W. 609 (Tenn. 1911). Nothing in the *McIntyre* comparative fault system has changed this basic responsibility of Plaintiff. The rule, as reiterated and supplemented following *McClenanhan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991), recognizes Plaintiff's burden of proof as to both cause in fact and proximate cause. *See Waste Management v. South Central Bell*, 15 S.W.3d 425, 430 (Tenn.Ct.App. 1997). Acting under the common law rule the supreme court decided *Transports, Inc. v. Perry*, 414 S.W.2d 1 (Tenn. 1967). In that case Mrs. Viola Perry, injured while a passenger in an automobile, brought suit against the owner and driver of the bus involved in a rear end collision. The evidence before the jury as to the injuries to Mrs. Perry was conflicting particularly as to

whether or not surgery subsequent to the accident had exacerbated her condition. In determining the case the court held:

> There was some evidence from which the jury might have found that the loss of continence, numbness in the vagina and other complaints later reported by Mrs. Perry were due to the laminectomy or exploratory surgery itself, and plaintiff correctly insists that if this were true, the defendants would still be liable for the same if the surgery itself was made necessary and was itself a direct and proximate result of the injury sustained in the accident. There was material evidence, however, from which the jury could have found that the surgery performed was not really made necessary by any injury or aggravation thereof sustained in this accident.
>
> This Court, like most others, recognizes that if one is injured by the negligence of another, and these injuries are aggravated by medical treatment (either prudent or negligent), the negligence of the wrongdoer causing the original injury is regarded as the proximate cause of the damage subsequently flowing from the medical treatment., *See Revell v. McCaughan*, 162 Tenn. 532, 538, 39 S.W.2d 269 (1931); *Shipley v. Wellwood Silk Throwing Mills*, 164 Tenn. 281, 47 S.W.2d 561 (1932); *Mallette v. Mercury Outboard Supply Co.*, 204 Tenn. 438, 450, 321 S.W.2d 816 (1959). We do not understand that the defendants controvert this well settled principle of law.

*Transports, Inc. v. Perry*, 414 S.W.2d 1, 4-5 (Tenn. 1967).

Two years after *McIntyre* this court first addressed the question of whether or not the rule in *Transports, Inc. v. Perry* survived *McIntyre v. Ballentine*. In reaffirming *Transports, Inc. v. Perry*, this court reasoned:

> Abolition of the common law rule would effectively shift the burden of proving medical negligence (or its absence) from the defendant to the plaintiff. To protect themselves, plaintiffs in future cases would feel compelled to timely name medical providers as defendants in any suit where the negligence of the original tortfeasor led to the necessity for medical care, whether or not medical negligence was actually suspected. In cases like the present one, where this was not done, and the one year statute of limitations for filing medical malpractice claims passed, allowing the defendant to allege medical negligence as an affirmative defense would unfairly prejudice the plaintiff's right to a full recovery for her injuries.
>
> By retaining the common law rule, as other jurisdictions that have adopted comparative negligence have apparently done, we do not penalize the injured plaintiff, nor do we eliminate any remedies previously available to the defendant. Though he may not assert the negligence of a subsequent medical provider as an affirmative defense to reduce his liability to the plaintiff, the defendant may still file a third party claim or a separate suit in subrogation to redeem his own rights against the negligent practitioner.

*Atkinson v. Hemphill*, 1994 WL 456349, *3 (Tenn.Ct.App. 1994) (no app. to appeal filed) (footnote omitted).

In 1998 the Eastern Section of this court followed *Atkinson v. Hemphill* in *Troy v. Herndon*, 1998 WL 820698 (Tenn.Ct.App. 1998) (no app. to appeal filed).

While the case at bar was on appeal, the Western Section of this court issued its opinion in *Jackson v. Hamilton*, W2000-01992-COA-R3-CV, 2003 WL 22718386 (Tenn.Ct.App. May 21, 2003) (*perm.app.denied* NFC May 10, 2004). In that case Plaintiffs appealed a $600 verdict and the Court of Appeals, relying on *Atkinson v. Hemphill* and *Troy v. Herndon*, reversed the trial court and remanded for a new trial, holding:

> Because we uphold the common law rule of the original tortfeasor's liability for subsequent medical complications, we find that the trial court committed prejudicial error when it refused to instruct the jury on this rule of law. In light of the disposition of this issue, the only other issue this Court needs to address is issue seven above.
>
> **Amending Defendant's Answer**
> Defendants assert that, if this Court should remand this appeal for a new trial, Defendants should be permitted to amend their answer to include the affirmative defense of the comparative fault of Dr. Robinson, the Plaintiff's chiropractor. We find, as the *Atkinson* and *Troy* courts did, that such an amendment would be inconsistent with the common law rule of holding the original tortfeasor liable for subsequent medical treatment. Though, at first glance, this may seem a harsh result for a defendant, as the Court in *Atkinson* noted, such defendant could have the alternatives of impleading a third party to the original suit or suing the medical provider under a theory of subrogation. *Id.* at *5. Therefore, we deny Defendants relief to amend their answer.

2003 WL 22718386, at *6.

On December 31, 2003, Defendant filed its application to appeal *Jackson v. Hamilton* to the Supreme Court and, on May 10, 2004, the Supreme Court denied the application but designated the opinion "not to be cited" pursuant to Supreme Court Rule 4. Section (F)(1) of that rule provides: "If an application for permission to appeal is hereafter denied by this court with a 'Not for Citation' designation, the opinion of the intermediate appellate court has no precedential value." Since *Jackson v. Hamilton* was predicated entirely on the survival of the common law rule in *Transport, Inc. v. Perry,* as that rule was reiterated by this court in *Atkinson* and *Herndon*, we must conclude that the Supreme Court has serious questions about the survival of the common law rule iterated in *Transport, Inc. v. Perry*. Since we have an ample basis for deciding this case on grounds other than the survival or non-survival of the common law rule in *Perry*, we pretermit the issue.

In a suit for malpractice against a "healthcare practitioner" employed by a local government entity and exempted from the protection offered to other local government employees under Tennessee Code Annotated section 29-20-310(b), Plaintiff faces the ordinary burdens in a malpractice action which are imposed by Tennessee Code Annotated section 29-26-115. Plaintiff must prove:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a).

"In Tennessee, expert testimony is required to establish negligence and proximate cause in malpractice actions unless the alleged malpractice is within the common knowledge of laymen." *Ayers v. Rutherford Hospital, Inc.*, 689 S.W.2d 155, 160 (Tenn.Ct.App. 1984); *Bursack v. Wilson*, 982 S.W.2d 341, 343 (Tenn.Ct.App. 1998).

Plaintiff attempts to establish her malpractice claim by the affidavit of Karen S. Ward, a clearly qualified registered nurse holding a Ph.D from Cornell University and a Master's Degree in psychiatric nursing from Vanderbilt. She opines:

> The acceptable standard of practical nursing practice on November 12, 1999, did not permit Mrs. Morrow, a licensed practical nurse, to conduct an assessment of Mr. Jenkins. Under the acceptable standard of practical nursing practice, Mrs. Morrow had a duty to refer Mr. Jenkins to an appropriate healthcare provider for appropriate assessment. The failure to do so constitutes a breach of the acceptable standard of practical nursing practice.
> Clear - or unclear - verbalization of pain in a specific site should not have determined one way or the other how to conduct the assessment. Mr. Jenkins' limitations on communication mandated a complete and thorough assessment. This included removal of his clothing to examine his lower extremities in their entirety. The failure to do so constitutes a breach of the acceptable standard of practical nursing practice.
> Given the nature and extent of the fracture, it is clear that this injury would have been discovered if a proper assessment had been performed by a competent healthcare provider.

As a direct and proximate result of Mrs. Morrow's breach of the acceptable standard of professional nursing practice, Mr. Jenkins' treatment for this significant fracture was unnecessarily delayed for several hours.

The record on appeal also contains the deposition testimony of Dr. Neil E. Green, Associate Professor of Pediatrics at Vanderbilt University Medical Center, who testified:

> Q.     Okay. Can you tell from the records that you've reviewed whether or not Jason Jenkins has suffered any permanent injury as a result of this fracture?
> A.     He has suffered no permanent injury.
> Q.     Okay. And can - - can you tell us whether or not in your opinion his treatment was - - the delay of treatment, if injury did occur earlier in the day, was worse - - worsened his injuries in any way or retarded his healing in any way?
> A.     No, it did not.

Plaintiff argues that since Dr. Green's testimony is not included in the Statement of Undisputed Facts filed by Defendant pursuant to Tenn. R. Civ. P. 56.03, the court is barred from considering Dr. Green's testimony in ruling on the Motion for Summary Judgment. This position is without merit. The specification of material facts under Tenn. R. Civ. P. 56.03 is designed "to assist the court in ascertaining whether there are any material facts in dispute." T.R.C.P. 56.03. The statement required under the rule is auxiliary to the motion in order to assist the court in rendering judgment on the motion "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.

In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993) the Supreme Court of Tennessee specifically endorsed the reasoning of the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Justice Brennan pointed out in *Celotex* the mechanics by which a moving party carries his burden under rule 56.

> Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

*Celotex v. Catrett*, 91 L.Ed.2d 265, 279.

At the time the Tennessee Supreme Court decided *Byrd v. Hall*, Tennessee Rules of Civil Procedure, Rule 56.03 provided the parameters of the trial court's consideration:

> The motion shall be served at least thirty (30) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Tenn. R. Civ. P. 56.03 (1993).

This is the Rule 56.03 that was construed by the Tennessee Supreme Court in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). Tennessee first adopted the "specifying material facts" procedure now embodied in Rule 56.03 in 1997. The advisory commission at that time stated "new rule 56.03 tracks the language of a local federal rule in the Middle District of Tennessee. The commission believes it will not only assist the court in focusing on the crucial portions of the record, but it will cause lawyers to ascertain whether there is 'a genuine issue as to any material fact.'"

The "concise statements of material fact," required since the 1997 amendment to Tenn. R. Civ. P. 56.03, are significant features of the summary judgment procedure. These statements assist with docket control and enable the courts to decide summary judgments motions efficiently and effectively. *See Jackson v. Finnegan, Henderson, Farabow, Garrett, and Dunner*, 101 F.3d 145, 151 (D.C.Cir. 1996). They serve as "road maps" and trial courts should not be required to proceed further if they are not provided. *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn.Ct.App. 2001). Thus, requiring compliance by both parties with Tenn. R. Civ. P. 56.03 is justified. *See Gardels v. Central Intelligence Agency*, 637 F.2d 770, 773 (D.C.Cir. 1980).

However, a decision to grant a summary judgment must ultimately be based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *See* Tenn. R. Civ. P. 56.04. Thus, while the Tenn. R. Civ. P. 56.03 concise statement points the court to the portions of the record that are particularly relevant to the summary judgment motion, it does not replace the evidentiary materials on which it is based.

Ms. Morrow's Tenn. R. Civ. P. 56.03 concise statement was filed on November 28, 2001. It did not refer to Dr. Green's opinion that her conduct had not caused any additional injury because Dr. Green had not yet been deposed. In fact, he was deposed the same day that Ms. Morrow filed her Tenn. R. Civ. P. 56.03 statement. The plaintiff's attorney participated in this deposition and cross-examined Dr. Green. Dr. Green was actually Metro's witness. Following Dr. Green's deposition, Metro moved for summary judgment. Its accompanying Tenn. R. Civ. P. 56.03 statement

referred to Dr. Green's opinion that "[t]he delay in treatment did not worsen Plaintiff's injury in any way or retard his healing in any way." [TR. 113, ¶ 22].

After the plaintiff dismissed its case against Metro, it would have been better practice for Ms Morrow to amend her Tenn. R. Civ. P. 56.03 concise statement to include Dr. Green's opinion. However, the plaintiff knew about Dr. Green's causation opinion and was aware that at least one of the defendants intended to use this opinion to challenge the plaintiff's ability to prove causation. The plaintiff made no effort to shore up its evidence of causation during the sixteen months between Metro's motion for summary judgment and the entry of the order granting Ms. Morrow's summary judgment motion. Under these facts, the plaintiff was not prejudiced by the fact that Ms. Morrow's Tenn. R. Civ. P. 56.03 concise statement did not refer to Dr. Green's causation opinion.

The evidence considered in the light most favorable to Plaintiff reveals that the conduct of Ms. Morrow played no part in causing the fracture to young Jason's leg. She was not present at the time Ms. Armbrister fell and Jason suffered his injuries. She came upon the scene afterwards and examined him for injuries and did not discover the fracture. Even if one concedes that the failure to diagnose the fracture was negligent, the critical question under the statute is whether Plaintiff "suffered injuries which would not otherwise have occurred." Tenn. Code Ann. § 29-26-115(a)(3). The affidavit of Karen S. Ward establishes only that the negligence of Ms. Morrow was responsible for the fact that "treatment for this significant fracture was unnecessarily delayed for several hours."

It is clear that the fracture of the leg occurred before Ms. Morrow came upon the scene. No proof is offered that the delay in treatment of the fractured leg caused any exacerbation of the injury or additional pain that otherwise would not have occurred. The affidavit of Ms. Ward does not refute the testimony of Dr. Green that Jason Jenkins suffered no permanent injury as a result of the accident or as a result of the treatment by Ms. Morrow. Further critical is the undisputed statement of Dr. Green that the failure to discover the fracture did not "worsen(ed) his injuries?"

So it is that matters which must be established by expert testimony under the Tennessee Medical Malpractice Act are simply not established in this record, and summary judgment was properly granted by the trial court. *See Estate of Henderson v. Mire*, 955 S.W.2d 56, 59 (Tenn.App. 1997); *Roddy v. Volunteer Medical Clinic, Inc.*, 926 S.W.2d 572, 577 (Tenn.Ct.App. 1996); *Parker v. Vanderbilt University*, 767 S.W.2d 412, 420 (Tenn.Ct.App. 1988); *Dolen v. Cunningham*, 648 S.W.2d 652, 654 (Tenn.Ct.App. 1982); Tenn. Code Ann. § 29-26-115.

The judgment of the trial court is affirmed with costs of the cause assessed to Appellant. The case is remanded to the trial court for collection of costs and any further proceedings necessary.

_____
WILLIAM B. CAIN, JUDGE