Irene DOLAN, Surviving Widow of James R. Dolan, Jr., deceased, James D. Dolan, III, Michael P. Dolan, Irene F. Byrd, Patricia D. Coleman and Merry E. Dolan, Surviving Children, Plaintiffs-Appellants,

v.

David CUNNINGHAM and The Neurosurgical Group, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section.

Nov. 29, 1982.

Permission to Appeal Denied by Supreme Court April 4, 1983.

James F. Schaeffer, Sr., Memphis, for plaintiffs-appellants.

Jerry E. Mitchell and Thomason & Hendrix, Memphis, for defendants-appellees.

HIGHERS, Judge.

James R. Dolan, Jr., and wife, Irene Dolan, filed this medical malpractice case on March 27, 1978; subsequently, on September 21, 1979, the plaintiff, James R. Dolan, Jr., died, and the pleadings were amended

to reflect an action for wrongful death brought by the widow and surviving children.

The issue in this case is whether the trial court was correct in granting summary judgment for the defendants.

## I.

The decedent, James R. Dolan, Jr., was seen by the defendant, Dr. David Cunningham, at Methodist Hospital in Memphis from February 6 to 11, 1976. The plaintiffs allege that Dr. Cunningham negligently diagnosed decedent's condition as a stroke when, in fact, he was suffering from a tumor of the brain. The contention of the plaintiffs is that this erroneous diagnosis caused severe and irreversible harm to Mr. Dolan which ultimately resulted in his death on September 21, 1979.

After Mr. Dolan's release from the hospital in February, 1976, he was treated at the Baptist Memorial Hospital Stroke Rehabilitation Unit under the care of Dr. W.T. Satterfield from August 30, 1976 to September 21, 1976. On February 26, 1977, he was readmitted to the Methodist Hospital under the care of Dr. Cunningham, but was discharged on March 4, 1977, to be treated elsewhere at his request. He was seen at the Veterans Administration Hospital on March 7, 1977, but he was not admitted at that time. On March 28, 1977, he was seen by Dr. Edward F. Gonyea at the Veterans Administration Hospital and was admitted on that date. Surgery was performed on April 4, 1977, for removal of a parasagittal meningioma (benign brain tumor). In May 1979 the decedent was readmitted to the Veterans Administration Hospital for possible recurrent meningioma, and in July of that same year a large tumor was surgically removed which was found to be a sarcoma (malignant). He died on September 21, 1979, due to a myocardial infarction which was secondary to his latest surgery.

The defendants filed affidavits by Dr. Cunningham, the defendant, and by Dr. J.T. Robertson, the subsequent treating neurosurgeon, in support of their motion for summary judgment in which it is stated that the defendants did not deviate from the applicable standard of medical care in their treatment of the decedent. The plaintiffs relied upon the deposition of Dr. Gonyea, the treating neurologist, in making out a genuine issue of material fact upon the expert evidence.

## II.

In *Bowman v. Henard,* 547 S.W.2d 527 at 531 (Tenn.1977), the Supreme Court of Tennessee set forth the principles to be followed in considering summary judgment motions in malpractice cases:

> In summary we hold that, in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise. In those cases wherein the acts are complained of are within the ken of the common layman, the affidavit of medical experts may be considered along with all other proof, but are not conclusive.

The rule requires, in the final analysis, that plaintiffs in malpractice actions must come forward within thirty days after the summary judgment motion is served, or within such reasonable period as the trial court in the exercise of sound discretion shall allow, with expert opinion on the issues of negligence and proximate cause to make out a genuine issue of material fact, or face the likelihood of summary judgment in favor of the defendants. The exception to the general rule arises in those cases where the acts of alleged negligence are within the knowledge of the ordinary layman. *Bowman v. Henard, supra; Baldwin v. Knight,* 569 S.W.2d 450 (Tenn.1978).

The operation of the rule in malpractice actions may at first appear to be harsh, but upon examination it clearly falls within the overall purpose of summary judgments. In *Evco Corporation v. Ross,* 528 S.W.2d 20 (Tenn.1975), Justice Harbison stated:

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

■ Summary judgments are not ordinarily appropriate in negligence actions, but where the question to be determined is one which requires expert proof, and no countervailing affidavits are filed to challenge the expert evidence offered by the moving party, summary judgment may be proper. In short, if the issue is one upon which expert proof is necessary, and the non-moving party cannot produce an expert affidavit to create a factual dispute, summary judgment may be appropriate to preclude the time, expense, and delay involved in protracted litigation.

### III.

■ The cause of death in the instant case was a myocardial infarction, commonly known as a heart attack. Our examination of the record reveals no expert testimony establishing a causal connection between the alleged negligence of the treating physician and the ultimate cause of death. In medical malpractice cases causation is generally a matter requiring expert testimony. *German v. Nichopoulos,* 577 S.W.2d 197 (Tenn.App.1978).

■ The theory of the plaintiffs, stated simply, is as follows: (1) Decedent saw Dr. Cunningham in February 1976; (2) Decedent's condition was negligently diagnosed as a stroke; (3) Decedent was subsequently found to have a brain tumor; (4) Decedent died of a heart attack in September of 1979; (5) Death was proximately caused by the failure of defendants to diagnose in a time-ly way the brain tumor of decedent. It is this last element which lacks the requisite proof by expert testimony. The plaintiffs have the burden of proving, by expert testimony (1) the standard of care, (2) that defendant deviated from that standard, and (3) that as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries *which would not otherwise have occurred. See T.C.A. 29–26–115.*

■ The plaintiff's expert testified in his deposition that he would have followed a different course of treatment in some respects than the defendant doctor, but such testimony does not relate to the issue of causation. The plaintiffs contend that an early diagnosis would have increased decedent's chances for survival. Counsel for the plaintiffs questioned Dr. Gonyea at length about the effect of failing to diagnose the tumor at an early stage. During the testimony the following exchange occurred:

Q. Do you have an opinion as to whether or not timeliness of diagnosis might or could affect the end result as far as the patient is concerned?

A. Definitely, overall, in many cases. I think there are some mitigating circumstances here.

Q. Well, be that as it may, in the general sense, doctor, in your opinion, would early diagnosis give a patient a better chance of survival?

A. Yes; no doubt about it.

It is apparent that the doctor distinguishes what would be true "in the general sense" from what he found in this instance. At a later point in his deposition, we have the following:

Q. In your opinion, did the failure to properly diagnose the tumor in February of 1976, and the failure at that time to take immediate action, appreciably decrease Mr. Dolan's chances for maximum recovery from the effects of the tumor?

A. I do have an opinion ... my feeling would be that it would not have made any difference ...

The expert testimony offered by plaintiffs is clearly insufficient to make out an issue on the subject of causation; particularly to show that the defendants were guilty of negligence to cause that "which would not otherwise have occurred." The doctor gave his opinion that the alleged failure of the treating physician "would not have made any difference" in the ultimate outcome.

The judgment of the trial court is accordingly affirmed, and costs are adjudged against the appellants.

NEARN, J., and MATHERNE, Special Judge, concur.