798 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John H. EPPS, next of kin of the deceased, Beulah D. Epps,
Plaintiff-Appellee,
v.
HUMANA OF TENNESSEE, INC., d/b/a East Ridge Community
Hospital, Defendant-Appellant.
 No. 85-5703.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1986.
 
 Before KRUPANSKY and GUY, Circuit Judges, and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant East Ridge Community Hospital appeals an adverse judgme nt entered after the jury found for plaintiff in this medical malpractice action. The jury also returned a verdict of no cause of action as against defendant Dr. Findley, and this finding has not been appealed. Defendant East Ridge alleges several claims of error. We find it necessary to address only one such error since we agree with defendant that evidence showing proximate cause is completely lacking. Accordingly, we reverse.
 
 
 2
 The facts, taken in favor of the plaintiff, reveal that the deceased, Beulah Epps, an 93 year old woman, was admitted to defendant hospital on the orders of Dr. Findley on December 15, 1981. Dr. Findley examined Mrs, Epps shortly after her admission, made a presumptive diagnosis of bilateral pneumonia and wrote out a list of orders for her care. Included in the list of medications was an order for 5 mg. of valium every four hours, to be administered when needed for nerves. All medication was ordered to be administered "p.o."; that is, by mouth.
 
 
 3
 At about 9:00 p.m., the hospital staff orally administered two Tylenol tablets, a Ceclor capsule and a teaspoon of Benylin expectorant. The hospital records indicated that about this time the deceased experienced a choking episode, became cyanotic, and had to be suctioned. She was thereafter placed on oxygen and an I.V. was started to administer medication. At 10:00 p.m., the deceased was given Pronestyl, again by mouth. Plaintiff pre sented testimony that the deceased again began choking. The hospital records do not reflect choking, but note that decedent was suctioned. After 10:00, decedent's condition deteriorated rapidly. She was transferred to intensive care on Dr. Findley's phone orders, but died at 11:40 p.m.
 
 
 4
 The State of Tennessee has statutorily defined the plaintiff's burden of proof in medical malpractice cases. Tenn. Code Ann. Sec. 29-26-115(a) provides:
 
 
 5
 29-26-115. Claimant's burden in malpractice action--Expert testimony--Presumption of negligence--Jury instructions.--(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by sub-. section (b).
 
 
 6
 (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
 
 
 7
 (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
 
 
 8
 (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
 
 
 9
 In an effort to meet these statutory requirements, plaintiff called Nurse Joan King as an expert witness to testify as to the standard of care required by hospital staff. Nurse King testified that the hospital staff had violated the standard of care in two ways. First, the staff should not have administered valium to Mrs. Epps. According to the witness, valium masks the signs of respiratory distress and it is contraindicated to give valium to such a patient. Second, the hospital staff violated the standard of care by giving an elderly patient who was semicomatose and in respiratory distress medication by mouth. This should not be done because "if a person is semicomatose and they are given oral medications, they can choke and aspirate, meaning they get the medication or fluid into the lungs." (TR. at 276.)
 
 
 10
 Although Nurse King's testimony was sufficient to get to a jury on the standard of care issue, she offered nothing helpful on the issue of proximate cause. As to her testimony that valium should not be administered because it masks the signs of respiratory distress, there was absolutely no testimony that the drug did mask signs of respiratory distress in the decedent. In fact, Nurse King did not testify at all as to the effect of valium on Mrs. Epps:
 
 
 11
 MR. MOORE: With respect to your comments on . the valium, you are not attempting to make a diagnosis of the effects of the valium on this patient, are you, ma'am?
 
 
 12
 NURSE KING: No.
 
 
 13
 There simply was no testimony to support the contention that the administration of valium contributed to Mrs. Epps' death. Consequently, liability could not be predicated upon this claim.
 
 
 14
 With respect to the proofs relating to the administering of medication by mouth, three members of the decedent's family testified that decedent choked on medication given to her orally at 9:00 p.m. and at 10:00 p.m. They testified that Mrs. Epps had to be suctioned both times. The hospital records do reflect that Mrs. Epps suffered a choking episode at 9:00 p.m. After the episode, the records indicate that Mrs. Epps was resting quietly and her respiration was regular. There is no record indication that she experienced another choking episode at 10:00 p.m . Around 10:00, decedent began experiencing periods of apnea; that is, periods where she did not breathe for short periods of time. At 10:15 p.m., the periods of apnea became longer. The staff con tinued suctioning to clear the lungs. Shortly thereafter, decedent was moved to the intensive care unit. Decedent's condition continued to deteriorate until 11:40 p.m., when she was pronounced dead. Dr. Findley testified that the cause of death was pneumonia.
 
 
 15
 Tennessee law is very clear that the plaintiff has the burden of proving that, as a proximate result of the defendant's negligent act, the plaintiff suffered injuries which would not other wise have occurred. Dolan v. Cunningham, 648 S.W.2d 652 (Tenn.App.1982). Causation is generally a matter requiring expert testimony. Id. at 654. Here, there was no testimony, expert or otherwise, that these choking episodes were a proximate cause of Mrs. Epps' death. Equally significant, there was no testimony that Mrs. Epps would not have died, just as she did, if she had not choked on the medication.
 
 
 16
 Nurse King testified that medication should not be orally administered to a semicomatose patient because the patient may aspirate the medication into their lungs. Although Nurse King may have assumed that such was the case here, again, there was no testimony that decedent actually aspirated her medication. Like wise, there was no testimony that even if the medication was aspirated, it was a cause of Mrs. Epps' death.
 
 
 17
 Plaintiff asserts that expert testimony is unnecessary where, as here, the acts of alleged negligence are within the knowledge of the ordinary layman. Thus, plaintiff contends, since choking is within the ordinary knowledge of laymen, it is unnecessary to present expert testimony to the effect that choking causes death. Even assuming this proposition to be true, it certainly does not automatically follow that choking can cause a person to die of pneumonia. This contention, if true, is not within the ordinary knowledge of a lay person. Yet, the only testimony on cause of death was Dr. Findley's, and he testified that Mrs. Epps died of pneumonia.
 
 
 18
 In an attempt to establish causation, plaintiff relies heavily on one isolated portion of Dr. Findley's testimony:
 
 
 19
 MR. BOEHM: And you didn't assess her condition as being life threatening at that time, did you, sir? [Upon admittance.]
 
 
 20
 DR. FINDLEY: No, sir, I didn't.
 
 
 21
 MR. BOEHM: It's fair to say, is it not, Dr. Findley, that at the time of her admission, at that time, it was more, far more likely that Mrs. Epps was I going to survive than die assuming adequate treatment, correct?
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 DR. FINDLEY: Yes, I think that was the way I would have felt at that time.
 
 
 25
 Significantly, Dr. Findley did not testify that Mrs. Epps received inadequate treatment. He did not identify any steps the hospital staff took as being inadequate or violating the standard of care. Most important, he did not connect any of the treatment alleged by plaintiff to be inadequate with the cause of Mrs. Epps' death.
 
 
 26
 Moreover, no legitimate inference could be drawn from this testimony on which to attach liability. While Dr. Findley's statement could be interpreted to imply that Mrs. Epps did not receive adequate care, it is equally susceptible of the interpretation that Mrs. Epps' condition was more serious than first thought. In short, this testimony allows a finding of causation based only on sheer speculation.
 
 
 27
 We have examined all the evidence presented on the issues and have taken the strongest legitimate view of the proof in favor of the plaintiff, discarding all countervailing evidence and resolving all disputes as to the material evidence or doubt as to conclusions to be drawn in favor of the plaintiff. We can find no basis for concluding that defendant's alleged acts of negligence were a proximate cause of Mrs. Epps' death. Accordingly, we REVERSE.
 
 
 
 *
 Honorable S. Arthur Spiegel, United States District Court for the Southern District of Ohio, sitting by designation