IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 24, 2008 Session

**EARNEST EDWIN GILCHRIST**
**v.**
**JUAN T. ARISTORENAS, M.D.**

**Appeal from the Circuit Court for McNairy County**
**No. 4825     J. Weber McCraw, Judge**

**No. W2007-01919-COA-R3-CV - Filed November 24, 2008**

This appeal arises from a medical malpractice claim. The defendant physician performed an operation on the plaintiff patient. Complications occurred during the surgery; as a result, the patient required several more procedures and spent approximately three weeks in the hospital. The patient hired an attorney, who obtained an opinion letter from a physician expert, in which the expert opined that the defendant physician breached the standard of care during the patient's initial operation. After securing the expert opinion, the patient filed this lawsuit against the defendant physician for medical malpractice. After the case had been pending for several years, the attorney for the defendant physician took the deposition of the patient's expert. At the deposition, the patient's expert changed his opinion, and testified that he believed that the defendant physician's care of the patient was not below the standard of care. The next day, the defendant physician filed a motion for summary judgment. Several months later, the patient filed a motion under Tenn. R. Civ. P. 56.07 requesting a continuance of the summary judgment motion because he had been unable to engage another expert. The trial court denied the plaintiff's motion for a continuance and granted summary judgment in favor of the defendant physician. The patient appeals. On appeal, the plaintiff argues that the trial court erred in denying his request to continue the motion for summary judgment. We affirm, finding no abuse of discretion in the trial court's denial of the request for a continuance, and thus in the grant of summary judgment in the defendant's favor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

John Marshall Jones, Memphis, Tennessee, for the appellant Earnest Edwin Gilchrist

Craig P. Sanders and Timothy G. Wehner, Jackson, Tennessee, for the appellee Juan T. Aristorenas, M.D.

**OPINION**

This case is an unfortunate cautionary tale for plaintiffs' attorneys. Plaintiff/Appellant Earnest Edwin Gilchrist ("Gilchrist") had been experiencing abdominal pain and loss of weight for several weeks, so he sought treatment at the office of Defendant/Appellee Juan T. Aristorenas, M.D. ("Dr. Aristorenas"). Dr. Aristorenas examined Gilchrist, determined that he had gallbladder disease, and recommended surgical removal of his gallbladder. On July 15, 1999, Dr. Aristorenas performed the surgery, a laparoscopic cholecystectomy, at Methodist Healthcare-McNairy Hospital ("McNairy Hospital") in Selmer, Tennessee. The surgery was projected to take about forty-five minutes.

Complications arose during the surgery, and it ended up taking much longer than was originally anticipated. After the surgery, Dr. Aristorenas transferred Gilchrist from McNairy Hospital to the care of Dr. Michael Ibach, a gastroenterologist at Jackson Madison County General Hospital. Because of the complications that occurred during Dr. Aristorenas' surgery, Dr. Ibach performed a procedure to drain bile from Gilchrist's abdomen. Dr. Ibach's efforts were apparently unsuccessful, so Gilchrist was air-lifted to the University of Tennessee Bowld Hospital in Memphis. At Bowld Hospital, Gilchrist underwent another procedure to remove more bile from his abdomen and repair his bile duct. Gilchrist was released from the hospital several weeks later on August 5, 1999. It took nearly five months for Gilchrist to recover sufficiently to be able to care for himself.

After Gilchrist was released from the hospital, he contacted an attorney who, in turn, sought an expert medical opinion from Mark Miller, M.D. ("Dr. Miller"), a general surgeon in Memphis, Tennessee. Dr. Miller reviewed Gilchrist's medical records from Dr. Aristorenas and McNairy Hospital. After doing so, on June 6, 2000, Dr. Miller sent a letter to Gilchrist's attorney stating his opinion that Dr. Aristorenas' care of Gilchrist had been below the applicable standard of care. Dr. Miller indicated that Dr. Aristorenas made several mistakes during the laparoscopic surgery, including inadvertently cutting a portion of Gilchrist's bile duct. He stated, "[T]he fact that the injury occurred is problematic but the more serious problem is the delay in determining [the] injury. The fact that the case was ended and the [procedure] was completed with the unrecognized damage to the common duct falls well below the required standard of care." Dr. Miller said that once a surgeon experiences unusual difficulty with a laparoscopic procedure, he should "proceed to an open procedure to facilitate completion of the operation for the patient's safety." Dr. Miller observed, "It appears, from the records, that the case lasted anywhere from 7 to 8 hours. . . . To extend beyond 7 hours is well outside the realm of the standard of care." In addition, Dr. Miller said that Dr. Aristorenas' decision to transfer Gilchrist to Dr. Ibach's care was "inappropriate." He stated, "A consultation from a Gastroenterologist would be beneficial but transfer of care was not indicated."

After receipt of Dr. Miller's letter, Gilchrist filed a lawsuit against Dr. Aristorenas on June 26, 2000 in the Twenty-Sixth Judicial District of Tennessee. This lawsuit was voluntarily non-suited, and then re-filed in McNairy County on September 26, 2000. The complaint stated a claim for medical malpractice against Dr. Aristorenas arising out of the July 15 surgery, echoing the assertions in Dr. Miller's opinion letter. For his injuries, Gilchrist sought damages in the amount

of $2,250,000. Dr. Aristorenas filed an answer, denying any negligence and raising several affirmative defenses.[1]

The depositions of both Gilchrist and Dr. Aristorenas were taken in August 2001. Three years later, on September 21, 2004, an agreed scheduling order was entered. Under the scheduling order, the deadline for Gilchrist to disclose his expert witness was September 30, 2004. On October 31, 2005, an amended scheduling order was entered that extended this deadline to February 3, 2006. On February 2, 2006, Gilchrist sent his expert witness designation to Dr. Aristorenas, identifying Dr. Miller as his expert. The parties then scheduled Dr. Miller's deposition.

The attorney for Dr. Aristorenas took Dr. Miller's deposition on January 22, 2007. To the astonishment and dismay of both Gilchrist and his attorney, Dr. Miller almost totally recanted the opinion he had expressed in his June 2000 letter to Gilchrist's attorney. In response to questions regarding Dr. Aristorenas' actions before and after the July 15 surgery, and regarding the prolonged duration of the surgery, Dr. Miller testified:

Q (by counsel for Dr. Aristorenas): Okay. So other than intraoperative failure . . . to recognize the common bile duct injury, all of Dr. Aristorenas' other treatment of Mr. Gilchrist, preoperatively and postoperatively, was appropriate and within the standard of care?
A: I believe so, yes.
Q: Okay. And the length of time of the procedure, you've told us that's a surgeon's judgment call?
A: (Witness nods head affirmatively.)
Q: And you personally wouldn't have gone that long, but you're not saying that was a deviation in and of itself?
A: That's correct.
Q: Okay. All right. When did you learn that the hospital in McNairy didn't have a gastroenterologist?
A: I'm not sure whether I just—when—initially when I looked at everything, just wasn't thinking along those lines, just didn't occur to me. You know, I'm so used to having a gastroenterologist nearby that that didn't occur.
Q: You get kind of spoiled practicing in Memphis, don't you?
A: That's correct.

Thus, in stark contrast to his earlier opinion letter, Dr. Miller saw no problem with Dr. Aristorenas' decision to complete the surgery laparoscopically rather than by open procedure, and described the 7–8 hour duration of the surgery as a "judgment call." Upon learning that McNairy Hospital did not have a gastroenterologist on call, Dr. Miller also changed his opinion regarding Gilchrist's

---

[1]After Dr. Aristorenas filed his answer, Volunteer State Health Plan, Inc. ("Volunteer") filed a motion to intervene in this case under Tenn. R. Civ. P. 24. Volunteer stated in its motion that it was "entitled to recover from [Dr. Aristorenas] the amount [Volunteer] . . . paid out in medical expenses on behalf of its insured, Earnest Edwin Gilchrist," and, accordingly, that it was subrogated to Gilchrist's claim. The record does not contain an order indicating that Volunteer was permitted to intervene, and Volunteer is not a party to this appeal.

postoperative care, stating that he had "no criticism" of Dr. Aristorenas' decision to transfer Gilchrist to the care of Dr. Ibach in Jackson. To drive the final nail into the coffin, Dr. Miller concluded the deposition by stating unequivocally, "At no time do I think [Dr. Aristorenas] committed malpractice."

To add insult to injury, Dr. Miller made admissions indicating that he did not have knowledge of the standard of professional care in the defendant's applicable community, *i.e.*, in Selmer, McNairy County, Tennessee. ***Robinson v. LeCorps***, 83 S.W.3d 718, 724 (Tenn. 2002). Dr. Miller testified:

> Q: You don't sit here today and testify that you know what the standard of care was applicable to a surgeon in Selmer, McNairy County, Tennessee in July of 1999, do you?
> A: I cannot say that, no.
> Q: Because you're unaware of what capabilities and ancillary support a surgeon operating at that facility had to draw on if needed?
> A: That's correct.

This completed the utter collapse of the expert underpinning for Gilchrist's claim.

The day after the ill-fated deposition, not surprisingly, Dr. Aristorenas filed a motion for summary judgment. His statement of undisputed facts and his memorandum in support of the motion were filed almost three months later, on March 13, 2007. Dr. Aristorenas noted that Gilchrist was required, under Tennessee Code Annotated § 29-26-115, to establish the existence of a breach of the standard of care by competent expert medical evidence, and asserted that he was unable to do so. Dr. Aristorenas quoted Dr. Miller's testimony extensively, and filed a transcript of his own deposition, in which he testified that his treatment of Gilchrist had met the recognized standard of care in all respects.

On May 4, 2007, nearly four months after Dr. Miller's deposition and the filing of the summary judgment motion, Gilchrist filed a response in opposition to the motion. At the same time, he filed a request for a continuance of the motion. Pursuant to Tenn. R. Civ. P. 56.07, Gilchrist sought a ninety-day continuance in order to engage another expert witness. To support his request for a continuance, Gilchrist filed the affidavit of his attorney, Lancelot L. Minor, III ("Minor"), in which attorney Minor asserted that neither he, nor any of his co-counsel, knew prior to the deposition that Dr. Miller would so drastically change his opinion. Minor's affidavit stated, "Dr. Miller's complete and unforeseen change of opinion is the sole reason Mr. Gilchrist seeks such extraordinary relief under Rule 56.07."[2]

---

[2]In his deposition, Dr. Miller was asked how he came to be a consultant on the lawsuit. Dr. Miller said that attorney Minor represented him in a partnership dispute that spanned several years. Although Dr. Miller was satisfied with Minor's representation at the time he wrote the original opinion letter in this case, his level of satisfaction with Minor apparently changed. Dr. Miller testified:

(continued...)

Dr. Aristorenas opposed Gilchrist's request for a continuance, asserting that sufficient time had passed between initiation of the lawsuit and the filing of the motion for summary judgment for Gilchrist to have obtained a competent expert witness. Dr. Aristorenas maintained that he was entitled to a ruling on his summary judgment motion.

On July 9, 2007, the trial court denied Gilchrist's request for a continuance of the motion for summary judgment. The order stated:

> The Court finds in its discretion that Plaintiff's Request for a Continuance is not well taken and should be denied. Plaintiff has had adequate time to locate one or more expert witnesses to carry his burden of proof as set forth in Tenn. Code Ann. § 29-26-115. Plaintiff may have been surprised by the deposition testimony of his designated expert on January 22, 2007, but Plaintiff has had adequate time even after the deposition to obtain another expert witness. Plaintiff knew of the deficiencies of Dr. Miller's testimony in the deposition. Plaintiff knew that Dr. Miller's deposition

---

[2](...continued)

Q:  So . . . you have not submitted a bill for any services that you've provided as an expert . . . to Mr. Gilchrist?
A:  That's correct.
Q:  All right. Do you intend to do so?
A:  Yes.
Q:  When?
A:  I'm not sure.
Q:  Okay. Are you doing this just as a favor to Mr. Minor?
A:  Initially, yes, back in 2000.
Q:  Well, he represented you for six years in an area that I know can be particularly nasty. Was yours – that partnership dissolution that you endured, was it fairly contested and disputed?
A:  Yes.
Q:  Would you describe it as being bitter?
A:  Yes
Q:  Were you thankful to have Mr. Minor with you through that process?
A:  No.
Q:  Were you pleased to have him as your attorney?
A:  No.
Q:  Did he represent you in a fashion that you were pleased with at the end of it?
A:  No.
Q:  All right. If you were unhappy with him, then why did you as a favor agree to review this case in 2000?
A:  During the time I agreed to review this case, I was happy with his services. That was in the middle of it.
                                    * * *
Q:  . . . At what point are you going to decide whether to submit a bill to Mr. Heflin or Mr. Jones . . . for your work in this case?
A:  Oh, I'll submit a bill. I'm not sure when, but it will be after the deposition.

The record does not indicate whether Dr. Miller's apparent dissatisfaction with attorney Minor affected his opinion on the merits of the case, and we make no assumption that it did.

testimony was being tested in the Motion for Summary Judgment filed on January 23, 2007. The Defendant's Motion for Summary Judgment was not heard before this Court until June 11, 2007—nearing five months after the deposition of Dr. Miller and the filing of the motion. The Court finds that the Plaintiff has had adequate time for discovery in this case and to obtain an expert witness.

Thus, the trial court found that Gilchrist had had ample time to obtain an expert witness. After denying Gilchrist's motion for a continuance, the trial court granted summary judgment in favor of Dr. Aristorenas. From this order, Gilchrist now appeals.

On appeal, Gilchrist argues that the trial court erred in denying his request for a continuance of Dr. Aristorenas' motion for summary judgment. We review a trial court's refusal to grant a continuance under Rule 56.07 for an abuse of discretion. *Hill v. Giddens*, No. W2006-02496-COA-R3-CV, 2007 WL 4200417, at \*9 (Tenn. Ct. App. Nov. 29, 2007) (citing *Sanjines v. Ortwein & Assocs., P.C.*, 984 S.W.2d 909, 909 (Tenn. 1998); *Moorehead v. State*, 409 S.W.2d 357, 358 (Tenn. 1966)). In reviewing for an abuse of discretion, we give ample deference to the trial court's decision. A trial court will be found to have abused its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.' " *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

Representing a plaintiff in a medical malpractice lawsuit is no easy task. Under Tennessee's Medical Malpractice statute, the claimant has the burden of proving three facts: the "recognized standard of acceptable professional practice" in the relevant medical specialty and community; that the defendant failed to act in accordance with this standard; and that the plaintiff's injuries were caused by the defendant's actions. T.C.A. § 29-26-115(a) (2000 & Supp. 2008). More often than not, the plaintiff's medical malpractice claim must be supported by expert testimony. The statutory requirements for an expert in a medical malpractice lawsuit are daunting indeed:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

T.C.A. 29-26-115(b) (2000 & Supp. 2008); *see also, e.g., Baldwin v. Knight*, 569 S.W.2d 450, 456 (Tenn. 1978); *McConkey v. State*, 128 S.W.3d 656, 659–60 (Tenn. Ct. App. 2003). If the defendant in such a medical malpractice action files a motion for summary judgment supported by expert testimony that the standard of care was not breached, the plaintiff must respond with expert proof, "by affidavit or otherwise," tending to establish negligence. *Bowman v. Henard*, 547 S.W.2d 527,

531 (Tenn. 1977); ***Dolan v. Cunningham***, 648 S.W.2d 652, 653 (Tenn. Ct. App. 1982). If the plaintiff fails to do so, the court will likely grant the defendant's motion for summary judgment because the defendant has negated an essential element of the plaintiff's claim. ***Dolan***, 648 S.W.2d at 653.

If the plaintiff is faced with a motion for summary judgment and is not yet prepared to offer expert proof in response to the motion, he may, under appropriate circumstances, seek a continuance under Rule 56.07[3] of the Tennessee Rules of Civil Procedure. Rule 56.07 "is intended to serve as an additional safeguard against an improvident or premature grant of summary judgment." ***Kenyon v. Handal***, 122 S.W.3d 743, 753 n.7 (Tenn. Ct. App. 2003) (citing ***Brown v. Miss. Valley State Univ.***, 311 F.3d 328, 333 n.5 (5th Cir. 2002); ***Price v. Gen. Motors Corp.***, 931 F.2d 162, 164 (1st Cir. 1991)). A court considering a request for a continuance filed under Rule 56.07 must balance the Rule's protective purpose against the potential for its use "to aid parties who have been lazy or dilatory." ***Id.*** (citation omitted).

In the proceedings below, the trial court found that Gilchrist had had adequate time to locate an expert witness to support his claim. It acknowledged that Gilchrist was undoubtedly surprised by Dr. Miller's deposition testimony, but noted that Gilchrist had nearly five months after the deposition before the hearing on Dr. Aristorenas' motion for summary judgment. It found further that Gilchrist had had ample time for discovery.

We agree with the trial court's observations. Moreover, we cannot ignore the fact that, from the date of Gilchrist's surgery, over seven years had passed before Dr. Miller's deposition was taken. Under all of these circumstances, the trial court's conclusion that Gilchrist had had sufficient time to obtain expert testimony to support his claim was not "against logic or reasoning" and was, therefore, not an abuse of discretion. Thus, we find no error in the trial court's grant of summary judgment in favor of Dr. Aristorenas.

The decision of the trial court is affirmed. The costs of this appeal are to be taxed to Plaintiff/Appellant Earnest Edwin Gilchrist, and his surety, for which execution may issue if necessary.

_____

_____

[3]Rule 56.07 provides in full:

Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Tenn. R. Civ. P. 56.07.

HOLLY M. KIRBY, JUDGE