IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 23, 2010

# NANCY LUNA v. ROGER DEVERSA, M.D. and HAMILTON COUNTY HOSPITAL AUTHORITY

Appeal from the Circuit Court for Hamilton County
No. 08-C-411     W. Jeffrey Hollingsworth, Judge

No. E2009-01198-COA-R3-CV - FILED JUNE 17, 2010

This appeal arises from a medical malpractice claim. A surgeon performed a procedure on the plaintiff at the defendant hospital. The defendant hospitalist physician monitored the plaintiff's post-surgery recovery. The plaintiff filed this lawsuit asserting that the defendant hospitalist was negligent in releasing her from the hospital prematurely. The defendant hospitalist filed a motion for summary judgment, as did the hospital. The trial court granted summary judgment to both. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Nancy Luna, Palmer, Tennessee, pro se.

Laura Beth Rufolo, Chattanooga, Tennessee, for the appellee, Roger DeVersa, M.D.

Robert J. Boehm and C. Eugene Shiles, Chattanooga, Tennessee, for the appellee, Chattanooga-Hamilton County Hospital Authority.

## OPINION

## I. BACKGROUND

On March 23, 2007, the plaintiff, Nancy Luna, presented at the emergency room at Chattanooga-Hamilton County Hospital Authority ("Erlanger"). Her chief complaint was

that she was unable to breathe when she laid down. After her ear, nose and throat physician, Dr. Joseph Motto, was consulted, Ms. Luna was admitted to Erlanger.

The following day, Dr. Motto performed a ten minute outpatient surgery on Ms. Luna to remove polyps from her vocal cords. Dr. Motto noted in the medical record that Ms. Luna could be discharged after it was determined that she was stable. Post-surgery, Ms. Luna was taken first to the Post Anesthesia Care Unit ("PACU"). She was then transferred to a recovery floor. The defendant hospitalist, Roger DeVersa, M.D., took over her care at this point.

Dr. DeVersa examined Ms. Luna at 7:33 p.m. and determined that she was stable enough to go home. When he advised Ms. Luna that he was going to discharge her, she responded that she did not want to go home and did not have a ride. Upon reviewing her medical record, Dr. DeVersa called the emergency contact person listed, who agreed to pick Ms. Luna up from Erlanger.

Upon being informed that her emergency contact person was coming to pick her up, Ms. Luna told Dr. DeVersa that she did not want to go home with the individual he had called and would drive home herself. According to Dr. DeVersa, despite his instructions that she should not drive herself home, Ms. Luna insisted that she was going to leave. Dr. DeVersa therefore requested that Ms. Luna sign a form acknowledging that she was signing herself out against medical advice or "AMA."

Later, an ambulance was called for Ms. Luna after she pulled over while driving. She was returned to Erlanger, where she remained in the emergency room for approximately two hours until discharged to the care of someone to drive her home.

On March 24, 2008, Ms. Luna filed this lawsuit against Dr. DeVersa and Erlanger for medical malpractice pursuant to the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-115(a). In her complaint, Ms. Luna alleged that Dr. DeVersa and Erlanger were negligent in discharging her "prematurely" from the hospital and that their actions caused her to "suffer a heart attack, stroke, and fall into a diabetic coma."

Dr. DeVersa subsequently filed a motion for summary judgment on September 15, 2008. In his affidavit in support, he stated, in pertinent part, as follows:

> 2. I am a physician currently licensed to practice medicine in the State of Tennessee. I was also licensed to practice medicine in the State of Tennessee in 2007. I practice the specialty of internal medicine now and during the year 2007 in the Chattanooga, Hamilton County, Tennessee area.

3. As a result of my education, training, background and experience practicing the specialty of internal medicine in the Chattanooga, Hamilton County, Tennessee area, I am familiar with the recognized standard of acceptable professional practice required of an internal medicine physician in the Chattanooga, Hamilton County, Tennessee area now and in the year 2007.

\* \* \*

9. At 4:14 p.m., the nurse noted that Ms. Luna demonstrated the ability to feed herself. By 5:54 p.m., it was noted that she was drinking liquids.

10. I saw Ms. Luna on the floor at 7:33 p.m. I performed a physical examination of her. She was alert, oriented, coherent and not anxious. Her lungs and heart were normal. Her abdomen was normal. Ms. Luna's vital signs were normal. She did not complain[] of pain. She had no nausea or vomiting. She indicated that she was eating and drinking okay. I felt that she was stable and could be discharged from the hospital.

11. Some of the indications that I look at to decide whether a patient is ready for discharge are the vital signs, the physical examination, the neurological status, the heart/lung status, [his/her] ability to eat and drink, and whether the patient can mobilize independently.

12. I told Ms. Luna that I was going to discharge her from the hospital. She told me that she did not want to go home, and did not have a ride. I did not want Ms. Luna driving a car home by herself, and told her so.

13. I looked at her medical records and found a contact for a friend or family member. I called the contact, Ms. Beverly Gaston. Ms. Gaston was willing to come to the hospital and drive Ms. Luna home. I advised Ms. Luna of this.

14. I told Ms. Luna that Ms. Gaston was coming to the hospital to take her home. Ms. Luna said that she did not want that to occur. She advised me she would just drive home alone. Again, I stressed to Ms. Luna that she did not need to be driving home alone.

15. I told Ms. Luna that since she was going against my advice and insisting that she drive herself home, I wanted her to sign out AMA or "against medical advice[."]

16. Ms. Luna signed the AMA document, and left the hospital. It is my understanding that she started to drive herself home, against my advice, when she experienced dizziness and called the police.

17. It is my understanding that an ambulance picked Ms. Luna up at her automobile, and brought her to the emergency room at Erlanger Medical Center. Her glucose had been low at the scene, and the EMS gave her D50 to increase her glucose. By the time she reached the emergency room, her glucose was normal. Ms. Luna stayed for approximately two hours at the emergency room and was discharged home.

18. It is my professional opinion that the medical care, treatment and management I provided to Nancy Luna met the recognized standard of acceptable professional practice at all times. It is my professional opinion that I acted with ordinary and reasonable care in accordance with such recognized standard of acceptable professional practice.

19. It is my professional opinion that my decision that Ms. Luna was stable to be discharged from the hospital after her surgery met the recognized standard of acceptable professional practice. It was appropriate to discharge her at the time I did.

20. It is further my opinion that the matters set forth in the Complaint were not the result of any alleged failure on my part to meet the recognized standard of acceptable practice.

21. The decision to discharge a patient is made by the attending physician, not the nursing staff.

Erlanger filed its motion for summary judgment three months later. An affidavit from Daniel Greach, R.N., was filed in support of the motion:

2. I am a Registered Nurse and have been continuously licensed to practice nursing in the State of Tennessee since 1974. Since my licensure, I have been continuously employed as a Registered Nurse within the state of Tennessee and have been employed at Erlanger Hospital since 1974.

3. At all relevant times in regard to this complaint, I was the assistant nurse manager and supervised the nurses providing care to the plaintiff.

7. Dr. Motto wrote in his orders that the plaintiff could be discharged from the hospital once she was found to be stable. (See Exhibit 3.)

8. At approximately 4:14 p.m. the plaintiff demonstrated the ability to carry out normal activities. (See Exhibit 4.)

9. The medical records indicated that the plaintiff was examined at about 7:20 p.m. on March 24 by Dr. Deversa and found stable and medically ready to be discharged home. (See Exhibit 5.)

10. The medical records reflect that Dr. Deversa ordered the patient discharged and attempted to arrange transportation for her return home. However, the records reflect that the plaintiff declined the ride home and accepted the risks of leaving against medical advice. (See Exhibit 5.)

11. The medical records reflect that Ms. Luna signed the AMA document and left the hospital (See Exhibit 6.)

12. The medical records reflect that while driving home, Ms. Luna reported feeling dizzy, parked her vehicle, and called the police. (See Exhibit 7.)

13. The medical records reflect that at the scene, an emergency medical technician checked her glucose level, found it to be low, and administered glucose while en route back to Erlanger Hospital. By the time the plaintiff reached the emergency room, her blood/glucose levels had rebounded. (See Exhibit 7.)

14. The medical records reflect that the plaintiff remained at Erlanger's emergency room for approximately two hours for observation and then was discharged home. (See Exhibit 7.)

15. I have also reviewed plaintiff's medical records from subsequent visits to Erlanger. I find no evidence of the plaintiff suffering "a heart attack, stroke and falling into a diabetic coma."

16. I know the standard of acceptable professional practice for Registered Nurses practicing in hospitals in Hamilton County, Tennessee or similar communities at the times alleged in the plaintiff's complaint.

17. Based on my training and experience, I am qualified to render an expert opinion on the issue of standards of acceptable professional practice for Erlanger or similarly situated hospitals providing nursing care.

18. It is my opinion, to a reasonable degree of professional certainty, that Erlanger met the recognized standard of acceptable professional practice for hospitals operating in Chattanooga, Tennessee or similar communities in providing nursing care and in following Dr. Deversa's order to discharge the plaintiff from the hospital after his physical assessment.

19. It is also my opinion, to a reasonable degree of professional certainty, that neither Erlanger nor any of its nursing staff were negligent or even responsible in allegedly "releasing the plaintiff prematurely" since only a physician can discharge a patient from the hospital. Registered nurses are not authorized under their state practice act (T.C.A. §63-7-103(b)) to order discharges.

20. Furthermore, there is nothing in the relevant medical records or from my knowledge of the case which calls into question the medical judgment of Dr. Deversa to discharge the plaintiff from the hospital after he examined her at approximately 7:20 p.m. on March 24, 2007.

After the summary judgment motions were filed, Ms. Luna, unrepresented, requested numerous extensions of time. The trial court ultimately held that if no responses to the pending motions were filed by Ms. Luna by May 4, 2009, both motions would be granted.

In spite of the fact that Ms. Luna never filed responses, a hearing on both summary judgment motions was held on May 4, 2009. After hearing argument from both defense counsel as well as Ms. Luna, the trial court took the matter under advisement in order to review whether Dr. DeVersa and Erlanger had provided appropriate affidavits to support their respective motions. Subsequently, the court granted both dispositive motions through an order and memorandum opinion. The trial court specifically held as follows:

[I]n order to prevail in her claim against Dr. Deversa, Ms. Luna is required to prove, by expert testimony, that Dr. Deversa's actions violated the standard of care in this community. With his affidavit, Dr. Deversa affirmatively negated that essential element. Therefore, the burden was shifted to Ms. Luna to produce evidence that there is a question of fact on that issue. Despite being given numerous opportunities to produce that evidence, Ms. Luna has failed to do so. Therefore, the Court finds there is no issue of fact to be tried on Ms.

-6-

Luna's claims against Dr. Deversa and his motion for summary judgment will be **Granted**.

. . . The only allegation Ms. Luna makes against Erlanger is that Dr. Deversa, who she alleged was negligent, was acting as an agent of Erlanger. Neither Dr. Deversa nor Erlanger address the agency issue in their motions. However, under these pleadings, Erlanger's liability would have to be derivative of that of Dr. Deversa. Because the Court has already granted Dr. Deversa summary judgment, there cannot be any derivative liability attached to Erlanger.

(Emphasis in original.)   The trial court found that the affidavits affirmatively negated the essential element of negligence. As a consequence, the burden shifted to Ms. Luna to show that there was indeed a question of fact. Because Ms. Luna failed to produce any evidence to rebut the affidavits, the motions for summary judgment were granted.

From these orders, Ms. Luna appeals.

## II.  ISSUE

We restate the issue raised by Ms. Luna in this appeal as follows:

Whether the trial court was correct in granting the defendants' motions for summary judgment because defendants affirmatively negated the essential elements of negligence, injury and causation in the plaintiff's case and the plaintiff failed to comply with reasonable and appropriate court orders and Tennessee's Medical Malpractice Act, Tenn. Code Ann. § 29-26-115(a).

## III.  STANDARD OF REVIEW

A pro se litigant, who has decided to represent herself, is "entitled to fair and equal treatment by the courts." *Young v. Barrow,* 130 S.W.3d 59, 62 (Tenn. Ct. App. 2003) (citing *Whitaker v. Whirlpool Corp.,* 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). We measure the papers prepared by pro se litigants by less stringent standards than those applied to papers prepared by attorneys. *Id.* at 63 (internal citations omitted). Thus, courts "should give effect to the substance, rather than the form or terminology of a pro se litigant's papers." *Id.* (internal citations omitted). As we grant such consideration to a pro se litigant who is untrained in the law, it is also important that we "be mindful of the boundary between

fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id.*

In reviewing a trial court's grant of a motion for summary judgment, this court must determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000). Our inquiry involves only a question of law with no presumption of correctness attached to the lower court's judgment. *Id.* Under Tenn. R. Civ. P. 56.04, "[s]ummary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993)). In Tennessee, the moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either

(1) affirmatively negate an essential element of the nonmoving party's claim;

or

(2) show that the nonmoving party cannot prove an essential element of the claim at trial.

*Hannan,* 270 S.W.3d at 8-9. A "conclusory assertion" is not enough to shift the burden. *Id.* at 5 (quoting *Byrd,* 847 S.W.2d at 215). It is also not enough for the moving party to "cast doubt on a party's ability to prove an element at trial." *Hannan,* 270 S.W.3d at 8.

If the moving party presents a properly supported summary judgment motion, the burden then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Byrd,* 847 S.W.2d at 215. We review the trial court's grant of summary judgment de novo with no presumption of correctness. *Guy v. Mutual of Omaha Ins. Co.,* 79 S.W.3d 528, 534 (Tenn. 2002). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Staples,* 15 S.W.3d at 89. Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. *Id.*

## IV. DISCUSSION

The claims against Dr. DeVersa and Erlanger fall under the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-115, et seq. The Act sets out three elements that

must be proved in a malpractice case:

> (1) The recognized standard of acceptable professional practice in the professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a); *see also Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006). As to these elements, we recently noted the following in *Hager v. Larson, M.D.*, No. E2009-00407-COA-R3-CV, 2010 WL 532856 (Tenn. Ct. App. E.S., Feb. 16, 2010):

> It is well established under Tennessee law that, except in circumstances in which the alleged malpractice is within the common knowledge of laymen, the plaintiff in a medical malpractice action is required to prove all of the three elements by expert testimony . . . . As is the case in the matter before this Court, it is now commonplace for defendants in medical malpractice cases to file motions for summary judgment to test the strength of the plaintiff's case. **The motion for summary judgment is generally supported by the defendants' own affidavits stating that, in their professional opinion, their actions neither violated the applicable standard of professional practice nor caused the alleged injury. A defendant's affidavit of this sort effectively negates the allegations of negligence in the plaintiff's complaint and forces the plaintiff to demonstrate the existence of a genuine, material factual dispute that warrants a trial.**

*Id.* at *3 (internal citations omitted) (emphasis added).

In the instant case, the affidavits produced by Dr. DeVersa and Erlanger were sufficient to shift the burden of production to Ms. Luna. To avoid summary judgment, Ms. Luna was required to produce expert testimony to counter the defense affidavits regarding the essential elements of her claim.

However, when the burden of production shifted to Ms. Luna, she failed to offer any

competent expert testimony. In *Kenyon v. Handal*, 122 S.W.3d 743 (Tenn. Ct. App. 2003), this court noted:

> Patients who are unable to produce an expert affidavit of their own face almost certain dismissal of their complaint because the physician has effectively negated an essential element of their case. Without an opposing expert affidavit, patients cannot demonstrate the existence of a genuine factual dispute regarding whether the physician breached the standard of professional practice in the community.

*Id.* at 758 (citing *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997)).

Accordingly, in view of the fact that Ms. Luna did not offer any expert proof, the trial court did not err in granting the motions for summary judgment because an essential element of Ms. Luna's claim had been negated. *Dolan v. Cunningham*, 648 S.W.2d 652, 653 (Tenn. Ct. App. 1982). Ms. Luna did not demonstrate the existence of a genuine, material factual dispute that warrants a trial.

## V. CONCLUSION

The order of the trial court granting the motions for summary judgment filed on behalf of Dr. DeVersa and Erlanger is affirmed. The costs on appeal are assessed against the appellant, Nancy Luna. The case is remanded to the trial court for such further proceedings as may be necessary and proper.

 

 

_____
JOHN W. McCLARTY, JUDGE